CITY OF MILWAUKEE, Respondent, vs. RAULF, Appellant.

*October 5—October 24, 1916.*

*Constitutional law: Labor regulations: Limiting hours of employment on public works: Powers of state and of municipal corporations: Police power: Ordinances: Penalties for violation: Validity: Reasonableness: Construction: Judicial questions: Public policy.*

1. The state has power to limit (as by sec. 1729*m*, Stats., it has limited) the hours of labor on public buildings or works contracted for by the state or any officer or agent thereof.
2. Such limitation of the hours of labor is not an exercise of the police power, but of a power incidental to and inherent in the right of the state to contract for public works and to specify the conditions under which labor upon public works shall be performed.

3. Although the power to prescribe the conditions under which public works shall be carried on by cities is primarily in the state, yet, subject to the constitutional limitation as to indebtedness and certain prescribed rules of procedure, the whole matter of providing public works in cities has been delegated to the cities themselves; and, as an incident to its power in that regard, a city has the same inherent power that the state has to prescribe the conditions upon which the work shall be done, including the power to fix the hours during which those employed shall be permitted to labor.

4. The fact that in its proprietary capacity a city has, as a part of its contractual powers, the incidental authority to limit the hours of labor on public works, does not prevent it in its governmental capacity from enforcing the limitation by ordinance.

5. Under the general welfare clause in its charter the city of Milwaukee had power to enact an ordinance limiting to eight hours per day the employment, by the city or by any contractor, of laborers and mechanics upon any of the public works of the city, and to impose a penalty for violation of such ordinance; and upon the adoption of such ordinance it had the force and effect of a law and became a part of every contract relating to such public works.

[6. Whether, in the absence of authority expressly conferred in the charter, such an ordinance could lawfully provide that its violation should be punished by imprisonment, is not decided.]

7. Such an ordinance limiting the hours of employment on public works does not conflict with a provision in the city charter requiring all contracts for such works to be let to the lowest bidder.

8. An ordinance limiting to eight hours per day the employment of laborers and mechanics upon any of the public works of the city is *held* in this case not unreasonable, although no provision is made therein for overtime except "in case of extraordinary emergency," and although the cost of the public works will be greatly increased thereby, as compared with the cost of doing the work under a ten-hour schedule.

9. The intention of such ordinance is that work theretofore done usually, ordinarily, and customarily during the nine- or ten-hour period should be done by persons employed upon public works for eight hours instead of nine or ten hours.

10. The courts, in passing upon the validity of a law, have nothing to do with mere questions of public policy, so long as the law is within the field of legislative power and discretion.

APPEAL from a judgment of the municipal court of Milwaukee county: J. C. LUDWIG, Acting Judge. *Affirmed.*

The appeal is from a judgment finding the defendant guilty of violating an ordinance of the city of *Milwaukee* prohibiting the employment of labor on public works contracts more than eight hours a day.

The defendant was arrested upon a warrant issued from the district court of Milwaukee county upon a sworn complaint charging him with the violation of the ordinance in question. Upon his arrest he appeared, pleaded not guilty, and by way of defense alleged that the ordinance in question was void. He was found guilty. Judgment of the district court was entered, and defendant appealed to the municipal court. The case was tried *de novo* in the municipal court upon the original complaint and an amended answer. The complaint was as follows:

"Dan McCargue, being duly sworn, on oath complains to the district court of the county of Milwaukee, that *Con Raulf, Jr.,* on the 16th day of July, 1914, at the city of *Milwaukee,* in said county of Milwaukee, did violate section 562 of an ordinance of said city entitled 'An ordinance to revise and codify the general ordinances of the city of Milwaukee,' passed May 25, A. D. 1914, in this, that the said *Con Raulf, Jr.,* being then and there a contractor engaged and employed upon certain public works of this city by contract with said city, to wit, concrete work at the mouth of the tunnel emptying into Kinnickinnic river at Cleveland avenue and First avenue in said city, and said defendant having in his employ, control and direction laborers and mechanics working on said public works, said defendant did then and there permit and require said laborers and mechanics to work more than eight hours on a certain calendar day, namely, the 16th day of July, A. D. 1914; that the said work performed by said laborers and mechanics for the defendant on said day was not work of extraordinary emergency as specified in said section of said ordinance; that the defendant did thereby become subject to pay the penalty provided for in said ordinance; that said ordinance was then and is now in force, and prays that the said *Con Raulf, Jr.,* may be arrested and held to answer to the said city of *Milwaukee* therefor."

The amended answer, omitting the formal parts, was as follows:

"For a further defense defendant alleges that a certain ordinance of the city of *Milwaukee,* entitled 'An ordinance relating to the limitations of daily service of laborers and mechanics employed upon the public works of the city of *Milwaukee,*' passed April 24, 1911, and particularly section 1 thereof, as re-enacted as section 562 of an ordinance of said city entitled 'An ordinance to revise and codify the general ordinances of the city of *Milwaukee,*' passed May 25, 1914, which defendant is alleged to have violated, is unconstitutional and void.

"For a further defense defendant alleges that said ordinance is *ultra vires,* and void because the terms thereof and the ordinary operation and effect of said ordinance is to conflict with the terms and provisions of the charter of the city of *Milwaukee,* and particularly with section 10 of chapter 5 of said charter, otherwise known as chapter 144, Laws 1875, as amended by chapter 324, Laws 1882, and further amended by chapter 388, Laws 1889.

"For a further defense the defendant alleges that said ordinance is void because the same is unreasonable, in that it prevents the doing of many kinds of city contract work, but particularly the kind of city contract work that the defendant was engaged upon at the time of his alleged violation of said ordinance, as herein charged, and renders the doing of such work impracticable and makes the cost thereof exorbitant and in that it unlawfully interferes with the right to contract upon the part of persons affected by said ordinance."

The case was tried by the court without a jury, and the trial resulted in the conviction and sentence of the defendant as follows:

"Ordered that *Con Raulf, Jr.,* the defendant herein, be and hereby is adjudged guilty of the violation of said section of said ordinance, that said defendant pay a penalty of $15, together with the costs of this suit taxed and allowed at $32.45, or in default thereof be committed to the house of correction for Milwaukee county, Wisconsin, for a term not to exceed thirty days."

From the judgment of the municipal court of Milwaukee county the defendant appeals.

*Lawrence A. Olwell,* of counsel, and *James T. Drought,* attorney, for the appellant.

For the respondent there was a brief by *Clifton Williams,* city attorney, and *Charles W. Babcock,* assistant city attorney, and oral argument by *Mr. Babcock.*

ROSENBERRY, J.   The defendant was properly convicted and sentenced if the ordinance relating to "hours of labor upon public works," being sec. 562 of the general ordinances of the city of *Milwaukee,* is a valid ordinance.   The defendant claims that it is not valid for four reasons, stated as follows:

"1. The ordinance is not authorized by the charter as an exercise of police power.

"(a)  There is no delegation of such authority.

"(b)  As a police power regulation, classification is improper.

"(c)  Would such a delegation of police power be constitutional?

"(d)  Could the legislature itself enact an eight-hour work day?

"2. If some regulation of hours of labor is within the delegated field of the police power under the *Milwaukee* city charter, the ordinance in question is unreasonable.

"3. The ordinance is not authorized by the *Milwaukee* city charter as subsidiary to the eighth division of the general welfare clause.   Neither is authority impliable from any charter provisions granting the right to contract for public work.

"4. Even if authority to in some manner regulate labor on public works may be implied from any provisions of the *Milwaukee* city charter, the ordinance in question is not a proper exercise of such authority because it conflicts with other express provisions of said charter."

The ordinance in question as set forth in the findings of fact by the court is as follows:

"Section 562. The service or employment of all laborers and mechanics who are now or who may hereafter be employed by the city of *Milwaukee,* or by any contractor, or subcontractor, upon any of the public works of this city, is hereby limited and restricted to eight hours in any one calendar day; and it shall be unlawful for any officer of the city government or any such contractor or subcontractor, whose duty it shall be to employ, direct or control the services of such laborers or mechanics, to require or permit any such laborer or mechanic to work more than eight hours in any calendar day, except in case of extraordinary emergency, as in case of war, fire, flood or danger to life or property."

"Section 563. Any officer of the city government, or any contractor, or subcontractor, and where such contractor, or subcontractor, is a corporation, any officer, manager or agents of such corporation, whose duty it shall be to employ, direct or control any laborer or mechanic employed in any public works of the city, who shall violate any provision of the foregoing section, for each and every offense, shall, upon conviction, be punished by a fine not to exceed twenty-five dollars, or to imprisonment in the house of correction of Milwaukee county for not more than thirty days."

The general welfare clause, so called, of the charter of the city of *Milwaukee* is as follows:

"The common council shall have the management and control of the finances and of all the property of the city, except as in this act otherwise provided, and shall likewise, in addition to all other powers herein vested in them, have full power and authority to make, enact, ordain, establish, publish, enforce, alter, modify, amend and repeal all such ordinances, rules, by-laws and regulations for the government and good order of the city—for the benefit of the trade, commerce and health thereof—for the suppression of vice—for the prevention of crime—and for carrying into effect the powers vested in said common council, as they shall deem expedient; and to declare and impose penalties, and to enforce

the same against any person or persons who may violate any of the provisions of such ordinances, rules, by-laws and regulations. And such ordinances, rules, by-laws and regulations are hereby declared to be, and have the force of law, provided, that they be not repugnant to the constitution of the United States or of this state."

This provision should be read in connection with ch. 678 of the Laws of 1913 (sec. 925—52c, Stats.), known as the Home Rule Act:

"1. All cities of the first class in this state are hereby granted the powers necessary to give full force and effect to the intention hereof.

"2. Whenever the legislature has heretofore granted to any city, however incorporated, a general welfare clause, preceded or followed by specific grants of power, such specific grants shall not be construed as restrictions upon such general welfare clause, but such general welfare clause shall be given a liberal construction, to the end that the cities may exercise all powers granted therein or reasonably implied therefrom.

"3. All statutes enacted by the legislature granting to such cities any powers or prescribing the method and manner of executing said powers shall be given a liberal construction, to the end that such cities shall be given the largest possible power and leeway of action under such statutes.

"4. Whenever the legislature has heretofore or may hereafter grant any such city power to do anything, such power shall be construed as including all things necessary to carry out said grant; and whenever, in construing any statute granting any powers or any rights to cities, there shall arise merely a question of doubt as to whether the legislature intended to grant any power or right, whether expressed or implied, such doubt shall be resolved in favor of the city possessing such power or right, whether such power or right shall concern the above or the manner of carrying out any power or right.".

Ch. 199 of the Laws of 1897 is as follows:

"In all cases of convictions in actions brought to recover a penalty imposed under the provisions of any ordinance passed by any city in the state of Wisconsin of the first class,

whether organized under the provisions of the general law
or operating under a special charter granted by the legisla-
ture of this state, to recover a penalty or forfeiture for the
violation of any of the ordinances, rules, regulations or by-
laws of any such city, the court or magistrate having juris-
diction of such action shall enter judgment for such penalty
or forfeiture, together with the costs of prosecution, against
the defendant, and shall also enter a judgment that such de-
fendant be imprisoned in the county jail or the house of cor-
rection of the county in which such city shall be situated,
until such judgment be paid, but in such cases the court shall
limit the time of imprisonment, which in no case, however,
shall exceed the term of six months, and shall forthwith com-
mit the defendant accordingly."

The constitution of this state (sec. 3, art. XI) not only
empowers the legislature to provide for the organization of
cities and incorporated villages, but makes it its duty to do
so. The city of *Milwaukee* is a body politic and corporate
and is established by law (1) to assist in the civil govern-
ment of the state, and (2) to regulate and administer the in-
ternal or local affairs of the territory within its corporate
limits, and as such it has such powers as are expressly granted
to it and such others as are necessary and convenient to the
exercise of the powers expressly granted. 1 Dillon, Mun.
Corp. (5th ed.) § 31; *Gilman v. Milwaukee,* 61 Wis. 588, 21
N. W. 640; *State ex rel. Elliott v. Kelly,* 154 Wis. 482, 143
N. W. 153.

In its capacity as a governmental agency the city is
charged with the duty of determining the necessity and the
extent and general character of all public improvements, in-
cluding streets, sewers, public buildings, lighting works, wa-
terworks, and other public works, and of providing for their
construction and maintenance; and on its proprietary side it
lets contracts for the erection and construction of all public
works and carries on many activities of a kind which in a
general way resemble those of a private corporation, although
everything inures to the benefit of the people. This distinc-

tion as to the different capacities in which municipal corporations act is important and is so well grounded as to be a part of the law of the land.    *Oliver v. Worcester,* 102 Mass. 489; 1 Dillon, Mun. Corp. (5th ed.) § 110; *Covington v. Kentucky,* 173 U. S. 231, 19 Sup. Ct. 383; *State ex rel. McCurdy v. Tappan,* 29 Wis. 664.

Sec. 3, art. XI, of the constitution contains the following provision:

"It shall be the duty of the legislature, and they are hereby empowered, to provide for the organization of cities and incorporated villages, and to restrict their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, so as to prevent abuses in assessments and taxation, and in contracting debts by such municipal corporations."

It has been held that cities charged with the duty of providing public improvements are, unless restricted by act of the legislature, limited only by the object and purpose of their creation.    *Oconto City W. S. Co. v. Oconto,* 105 Wis. 76, 80 N. W. 1113.

The city of *Milwaukee* is charged with the duty of providing public works within the city, and its powers are very broad in carrying out the legislative purpose, subject only to the constitutional limitations as to indebtedness and the restrictions imposed by the legislature.

The state may limit, and it has by legislative enactment limited, the hours of labor on public works which are contracted for by the state or any officer or agent thereof:

"Section 1729m.    1. Each and every contract hereafter made for the erection, construction, remodeling or repairing of any public building or works, to which the state or any officer or agent thereof is a party, which may involve the employment of laborers, workmen or mechanics, shall contain a stipulation that no laborer, workman or mechanic in the employ of the contractor, subcontractor, agent or other person, doing or contracting to do all or a part of the work contemplated by the contract, shall be permitted to work more than

eight hours in any one calendar day, except in cases of extraordinary emergencies.

"2. The phrase 'extraordinary emergencies,' as used in this section, shall mean and include only such as grow out of the necessity of protecting property or human life when endangered by reason of an attack by the public enemy or endangered from fire, flood or storm.

"3. This section shall apply only to such work as is actually performed on the premises on which such buildings or works are being erected, constructed, remodeled or repaired."

While the statute was enacted in 1909, its validity has, so far as we are aware, never been challenged. The validity of a statute very similar, except that by its terms it extended to contracts for public work by any city or other municipality, was sustained by the supreme court of the United States as well as by the supreme court of the state of Kansas. It was sustained by both courts on the ground that the state has the inherent power as a sovereignty to prescribe the conditions under which public work shall be carried on.

"Whatever may have been the motives controlling the enactment of the statute in question, we can imagine no possible ground to dispute the power of the state to declare that no one undertaking work *for it or for one of its municipal agencies,* should permit or require an employee on such work to labor in excess of eight hours each day, and to inflict punishment upon those who are embraced by such regulations and yet disregard them. It cannot be deemed a part of the liberty of any contractor that *he* be allowed to do public work in any mode he may choose to adopt, without regard to the wishes of the state. On the contrary, it belongs to the state, as the guardian and trustee for its people, and having control of its affairs, to prescribe the conditions upon which it will permit public work to be done on its behalf, or on behalf of its municipalities. No court has authority to review its action in that respect. Regulations on this subject suggest only considerations of public policy. And with such considerations the courts have no concern." *Atkin v. Kansas,* 191 U. S. 207, 222, 24 Sup. Ct. 124.

In 1892 Congress enacted a law (27 U. S. Stats. at Large, 340, ch. 352) "relating to the limitation of the hours of daily service of laborers and mechanics employed upon the public works of the United States and of the District of Columbia." The act limits the service and employment of all laborers and mechanics employed by the United States, by the District of Columbia, or by any contractor or subcontractor upon any of the public works of the United States or of the District, to eight hours in any one calendar day, and makes it unlawful to require or permit any such laborer or mechanic to work more than eight hours in any one calendar day, except in case of extraordinary emergency, and then provides that any person violating the law may be punished by fine or imprisonment or by fine and imprisonment. It was claimed that the statute was unconstitutional. The court said:

"The contention that the act is unconstitutional is not frivolous, since it may be argued that there are relevant distinctions between the power of the United States and that of a state. But the arguments naturally urged against such a statute apply equally for the most part to the two jurisdictions, and are answered, so far as a state is concerned, by *Atkin v. Kansas,* 191 U. S. 207, 24 Sup. Ct. 124. In that case a contractor for work upon a municipal boulevard was sentenced to a fine under a similar law of Kansas, and the statute was upheld. We see no reason to deny to the United States the power thus established for the states. Like the states, it may sanction the requirements made of contractors employed upon its public works by penalties in case those requirements are not fulfilled. It would be a strong thing to say that a legislature that had power to forbid or to authorize and enforce a contract had not also the power to make a breach of it criminal; but however that may be, Congress, as incident to its power to authorize and enforce contracts for public works, may require that they shall be carried out only in a way consistent with its views of public policy, and may punish a departure from that way. It is true that it has not the general power of legislation possessed by the legislatures of the states, and it may be true that the object of this law is of a kind not

subject to its general control. But the power that it has over the mode in which contracts with the United States shall be performed cannot be limited by a speculation as to motives." *Ellis v. U. S.* 206 U. S. 246, 255, 256, 27 Sup. Ct. 600.

The power of the state as well as of the United States to limit the hours of labor upon public works in no way involves the exercise of the police power, but is a power incidental to and inherent in its right to contract for public works and to specify the conditions under which labor upon public works shall be performed. So far as this case is concerned, the question of whether or not the city of *Milwaukee* may in the exercise of its police power limit the hours of labor upon public works drops out of consideration. The law being based upon the inherent power of the federal government and of the state and state agencies to contract, all questions of discrimination and classification are also eliminated.

It being established that the state has the power to limit the hours of labor on public works, including public works for its municipalities, has the city of *Milwaukee* such power?

The power to prescribe the conditions upon which public work shall be carried on is undoubtedly primarily in the state. When the state speaks its voice is law. The city is simply an agency of the state, and as such has only such powers as are conferred upon it expressly or by implication. The state of Wisconsin has not attempted to prescribe the conditions under which public work shall be carried on within the cities of this state. Cities are charged with the power and duty of determining the necessity for public works, their extent and character, and, subject to the constitutional limitation as to indebtedness and certain prescribed rules of procedure, the whole subject of providing for public works within a city is committed to the common council of the city. The whole matter of providing public works being delegated to the city, the city has, as an incident to its power to contract for the erection and construction of public works, the same

inherent power to prescribe the conditions under which the work shall be carried on within the city, in the absence of any restriction by the state, that the state has, and it may exercise this inherent power unless and until it is restricted by legislative enactment.

The city having, as incident to its power of contracting for public works, the power to prescribe the conditions upon which work shall be done, including the power to fix the hours during which those employed shall be permitted to labor, may it enforce its will in that respect by an ordinance and punish the violation of the ordinance by the imposition of a penalty?

If express authority to do this must be found in the charter of the city, its power to enact ordinances for carrying into effect the powers vested in it and to declare and impose penalties and enforce the same, given by the general welfare clause, is amply sufficient to sustain the enactment of the ordinance in question.    The fact that in its proprietary capacity it may as a part of its contractual powers have the incidental authority to limit the hours of labor on public works, does not prevent it in its governmental capacity from enforcing the limitation by ordinance.    "The government purely as contractor, in the absence of special laws, may stand like a private person, but by making a contract it does not give up its power to make a law."    *Ellis v. U. S.* 206 U. S. 246, 256, 27 Sup. Ct. 600.

Upon the adoption of an ordinance it has by the general welfare clause the force and effect of a law, and becomes, therefore, a part of every contract relating to public works within the corporate limits of the city of *Milwaukee.*    The existing law of the land is a part of every contract and must be read into it.    6 Ruling Case Law, p. 855.

The city may by the express terms of its charter enforce the ordinance by the imposition of a penalty.    The penalty is imposed, not for the breach of a contractual obligation, but

for the violation of the terms of the ordinance. The ordinance in question is no more nor no less a part of the contract than are many other ordinances of the city relating to the conduct of its business. Violations of rules and regulations for the use of water supplied by a municipality may be and often are punished by penalties, although the relation between the municipality and the consumer is usually a subject of contract.

The ordinance provides that any person violating it "shall upon conviction be punished by a fine not to exceed twenty-five dollars or to imprisonment in the house of correction of Milwaukee county for not more than thirty days." While it is true that the authority to punish violations of municipal ordinances by imprisonment must ordinarily be expressly conferred and will not be implied (2 Dillon, Mun. Corp. (5th ed.) § 625), it is not necessary to decide that point in this case.

The judgment in this case is that the defendant "pay a penalty . . . or in default thereof be committed to the house of correction for Milwaukee county, Wisconsin, for a term not to exceed thirty days." The judgment in this case is therefore for a penalty imposed under the provisions of an ordinance passed by a city of the first class, and in accordance with the provisions of ch. 199, Laws 1897, the court was required to enter the judgment in the form adopted in this case.

This being a civil action for forfeiture, we do not decide whether that part of the ordinance providing that a violation thereof shall be punished by a fine or imprisonment, so far as imprisonment is concerned, is a valid enactment. The judgment in this case being in accordance with the general law, the question is not before us.

The charter of the city of *Milwaukee,* in common with most municipal charters in this state, requires that all public contracts be let to the lowest bidder, and the ordinance in

question is said to be in conflict with that provision of the charter. If there is such conflict the charter must of course prevail. The trial court found that the cost of public work would be materially increased if the ordinance was enforced, and it is said for that reason contracts cannot hereafter be let to the lowest bidder. The charter does not require public work to be done at the lowest possible cost. The cost of public work is affected by many considerations, one of which is the cost of labor, another is the cost of materials, and there are many other considerations. The right to specify the grade of the material to be used does not limit the city to the specification of the cheapest grade of material. It may exercise its discretion in that respect. When the specifications are complete, including the prescribed limitation as to the hours of labor for men to be employed upon public work, all bidders are on the same footing, and the one bidding the lowest sum is the lowest bidder within the meaning of the charter.

Is the ordinance unreasonable, assuming that the city has power to enact it?

It is said to be unreasonable (1) because no provision is made for overtime, and (2) because, as appears from the findings of the court, it would be practically impossible to carry on the construction of public works if the ordinance should be strictly observed and enforced. The findings of the trial court upon this branch of the case are full and complete. The court found that the performance of the work called for by the contract under which the defendant was working at the time of the commission of the offense, required the employment of miners, so called, who are skilled laborers accustomed to doing tunneling and providing shoring and timbering as a part of the digging of sewers and work of the kind in question, and that the work likewise required the hiring of carpenters, and engineers to operate the necessary machinery for supplying the miners with air; that

the proper performance of said work required that the carpenters would often be employed when the miners themselves were not busy, in order to supply the said miners with timbering and material prepared by the carpenters to keep the said miners busy during their usual hours of labor; that it was necessary to have engineers employed prior to the time that the regular miners began their regular day shifts, in order that the machinery necessary to be operated while the miners were at work would be ready for operation when the regular miner crew started to do its work, it being necessary for at least one engineer to be on duty for at least an hour before the regular tunnel crew went to work. The court also found that the expense of doing the work in question under an eight-hour schedule would exceed the cost of doing the work by a ten-hour schedule by at least twenty per cent.; that the cost of street pavement would be largely increased; that the cost of the erection of public buildings in the city of *Milwaukee* will be largely in excess of what the same work could be done for under a ten-hour schedule.

We must assume in the first place that the ordinance will be reasonably construed and applied. It seems to us plain that the intention is that work heretofore done usually, ordinarily, and customarily during the nine- or ten-hour period shall be done by persons employed upon public works for eight hours instead of nine or ten hours. For instance, a teamster who begins his ten-hour day must have fed and cared for his team. He receives ten hours' pay and is ordinarily and customarily said to work ten hours. A fireman who banks his fires as a part of the usual day's work, although the entire period in which the service is rendered may extend beyond the ten-hour period, is said to work but ten hours.

So far as a provision for overtime is concerned, it must be apparent upon the slightest consideration that a provision for overtime would simply fix the compensation received and

would not limit the hours of labor of those employed upon public works. We cannot say, as applied to the facts in this case, that the ordinance is unreasonable, especially since it appears that the federal law has been in force since 1892 and the state law since 1907 and public work is being carried on under each of them. As to cognate questions which may arise under this ordinance and are not presented by this record, we do not express an opinion.

Many matters have been urged in support of the argument that the law is invalid which raise only questions of public policy, and, as has been said, with this the courts have nothing to do. In disposing of similar contentions made before it, the supreme court of the United States said:

"So, also, if it be said that a statute like the one before us is mischievous in its tendencies, the answer is that the responsibility therefor rests upon legislators, not upon the courts. No evils arising from such legislation could be more far-reaching than those that might come to our system of government if the judiciary, abandoning the sphere assigned to it by the fundamental law, should enter the domain of legislation, and upon grounds merely of justice or reason or wisdom annul statutes that had received the sanction of the people's representatives. We are reminded by counsel that it is the solemn duty of the courts in cases before them to guard the constitutional rights of the citizen against merely arbitrary power. That is unquestionably true. But it is equally true—indeed, the public interests imperatively demand— that legislative enactments should be recognized and enforced by the courts as embodying the will of the people, unless they are plainly and palpably, beyond all question, in violation of the fundamental law of the constitution. It cannot be affirmed of the statute of Kansas that it is plainly inconsistent with that instrument; indeed its constitutionality is beyond all question. . . . We rest our decision upon the broad ground that the work being of a public character, absolutely under the control of the state and its municipal agents acting by its authority, it is for the state to prescribe the conditions under which it will permit work of that kind to be done. Its action touching such a matter is final so long as it does not,

by its regulations, infringe the personal rights of others; and that has not been done." *Atkin v. Kansas,* 191 U. S. 207, 223, 224, 24 Sup. Ct. 124.

Without expressing any opinion, impliedly or otherwise, that such is the fact, if legislation of the character now before us is mischievous in its tendencies and results in increased tax burdens, the remedy rests with the people themselves. The remedy is legislative and political and is not to be found in the judicial field. The field of legislative discretion is broad, and as long as legislative bodies stay within its limits. their enactments are the law of the land. We conclude, therefore, that the ordinance in question is valid and that the defendant was properly convicted and sentenced.

*By the Court.*—Judgment affirmed.