## WILSON *et al. v.* CITY OF ATLANTA.

A municipal corporation, though not required by the charter to let contracts for public work to the lowest bidders, and though clothed as to such matters with the broadest discretionary powers, has no authority to adopt an ordinance prescribing a fixed scale of wages that shall be paid for all public work of the city. Such an ordinance by the City of Atlanta is ultra vires and illegal, because it tends to encourage monopoly and defeat competition, and also tends to put a heavier burden upon the taxpayers than they would have to bear if free competition were allowed; and all contracts made in pursuance thereof are void. *City of Atlanta v. Stein,* 111 *Ga.* 789 (36 S. E. 932, 51 L. R. A. 335); *Green* v. *City of Atlanta,* 162 *Ga.* 641, 652 (135 S. E. 84).

No. 5762.    JULY 16, 1927.

Petition for injunction. Before Judge Pomeroy. Fulton superior court. November 2, 1926.

*Alston, Alston, Foster & Moise* and *Randolph, Parker & Fortson,* for plaintiffs.

*J. L. Mayson, C. S. Winn,* and *J. L. Key,* for defendant.

HILL, J. On August 16, 1926, the mayor and general council of the City of Atlanta enacted the following ordinance:

"An ordinance providing for a standard or fixing of prices to be paid as wages for skilled laborers in the employ of the city or parties making contracts with the city, where such contracts provide for work or the erection of public buildings and bridges or repairs thereof; and also providing that eight hours will constitute a day's work for said laborers described as skilled laborers. . .

"Section 1. That the City of Atlanta hereby ordains that it is to the public interest that a minimum wage scale be fixed for work done upon or in the construction of public buildings and bridges and repairs thereon.

"Section 2. In line with this policy, the following scale or wage is ordained on all work done by the city itself or by contractors holding contracts for work upon or in the erection of public buildings or bridges and on all repairs thereon, where such public work or buildings are done by authority of the City of Atlanta: Blacksmith, 90 cents per hour. Carpenters, 80 cents per hour. Painters, 80 cents per hour. Bricklayers, $1.40 per hour. Plasterers, $1.25 per hour. Plumbers, $1.25 per hour. Steamfitters, $1.25 per hour. Electrical Workers, $1.00 per hour. Structural Iron and Steel Workers, $1.25 per hour. Wood, Wire, and Metal Lathers, $1.00

Master and Servant, 39 C. J. p. 225, n. 50.

per hour. Sheet Metal Workers, 80 cents per hour. Elevator Constructors, $1.18 per hour. Hoisting Engineers, $1.00 per hour. Stone Cutters, $1.12-½ per hour.

"Section 3. That hereafter all contracts entered into with said city shall provide that said wages shall be paid, and where the city itself does the work it shall itself pay said wages.

"Section 4. Where parties have made a contract with the city and have either agreed therein to pay said wages and have failed to do so, or make contract without such agreement and fail to pay said wages, then said contracts are hereby declared null and void, and no monies shall thereafter be paid thereon, and said contractors shall be deemed to have broken their contract with said city, and this ordinance shall be pleaded as a defense to any action brought thereon.

"Section 5. That eight hours is hereby ordained as the maximum hours to be performed on the work described in Section 2 of this ordinance, and employees of the city or of contractors thereon shall not be required to work upon said work, as therein described, for exceeding eight hours per day; provided that on Saturdays the maximum hours for the day's work shall not exceed four hours. If contractors violate the provisions of this section, their contract is hereby declared null and void, and no sum shall thereafter be paid thereon by the city, and the provisions of this ordinance can be pleaded as a defense to any action brought thereon.

"Section 6. That in case of a violation of the provisions of this ordinance it shall be the duty of the mayor and general council to see that the terms thereof are in force, and declare said contract null and void, and to decline to make further payments thereon.

"Section 7. That all ordinances and parts of ordinances in conflict with this ordinance be and the same are hereby repealed."

Applying the principle stated in the headnote, the ordinance just set forth is void as being ultra vires and illegal. The controlling facts in *City of Atlanta* v. *Stein,* supra, are so similar to the facts involved in this case as to render unnecessary an elaborate discussion of the principles there discussed. It was therefore erroneous in this case to refuse an injunction.

*Judgment reversed. All the Justices concur, except*

HINES, J., dissenting. Plaintiffs as residents and taxpayers of

the City of Atlanta, and as contractors who purpose to make bids upon buildings and other improvements contemplated by the City of Atlanta with the proceeds of the large bond issue recently authorized by popular vote, attack the legality and constitutionality of the ordinance in question. Broadly stated, this ordinance fixes eight hours for a day's work by skilled laborers upon the public buildings or bridges, and upon all repairs thereon, when done either by the city or by contractors, fixes a minimum scale of wages for skilled laborers engaged in such work when done either directly by the city or through contractors, and declares all contracts for the doing of such work void and unenforceable when made or performed in violation of the provisions of the ordinance, as to the hours of work or rate of wages. Plaintiffs insist that this ordinance is void, because the mayor and general council had no power to enact the same; and because it violates the due-process clauses of the Federal and State constitutions, in that it denies plaintiffs freedom of contract and the equal protection of the law, and further deprives them and other taxpayers of the city of their property, in violation of the above constitutional provisions, inasmuch as the enforcement of said ordinance will largely increase the cost of such public works, will saddle upon the plaintiffs and other taxpayers of the city the burden of meeting such increased cost, and will indirectly amount to the taking of their property without due process of law.

1. Did the mayor and general council of the City of Atlanta have the power to enact this ordinance? The scope of our inquiry is a narrow one. It does not involve the right of the State to fix by statute the hours of labor per diem for laborers employed upon the public works of the State or upon the public works of its municipalities. We are not called upon to determine whether the State or a city could generally fix the hours of labor to be performed daily by laborers, and whether the State or city could generally fix a minimum scale of wages to be paid by employers to their employees. The narrow question for our decision is this: Can the city, in erecting its public buildings and bridges, and in making repairs thereon, when the work is done by the city itself, or when it is done by contractors employed by the city, fix the number of hours which its employees or the employees of its contractors shall be required to work on such works daily, and pre-

scribe the wages which the city or its contractors shall pay to employees in doing such work? In *Mayor etc. of Cartersville* v. *Baker*, *73 Ga.* 686, this court held that a municipal corporation, under its general powers, could build schoolhouses within its limits, unless there was something in its charter which forbade it. It follows that a city, under its general powers, can erect other necessary public buildings. In *Town of Belton* v. *Vinton*, *73 Ga.* 99, this court decided that a municipal corporation was bound to use ordinary care to build and keep in repair a bridge in one of its highways, whether constructed by it or not. So the City of Atlanta, under its general powers, can build all necessary public buildings and bridges and keep them in repair. The city has this power under its charter. City Code of Atlanta (1924), § 52. Having this power, can the mayor and general council of Atlanta pass an ordinance respecting the hours which laborers employed by it in the erection of public buildings and bridges shall labor, and fixing their per diem for their labor, when the work is done by the city itself? It seems to me unquestionable that when the city itself erects a public building or a public bridge, or where it repairs either, it can fix the terms and conditions, including the daily wages to be paid laborers employed by it upon such public works, and likewise fix the number of hours which shall constitute a day's labor, upon which it will permit such public works to be done. In the recent case of *Green* v. *Atlanta*, 162 *Ga.* 641 (supra), we held that "the legislative body of a municipality, 'within a reasonable and fair compass,' may fix the wages paid to city employees, and prescribe rules with reference to such services." It follows that it can pass a general ordinance which shall govern in these matters, and will not be required to pass a separate ordinance which shall govern each public improvement undertaken by it.

Can the city fix a minimum wage which contractors employed by it to erect public buildings or bridges, or make repairs thereon, shall pay the laborers whom they employ in such work, and fix the hours of labor beyond which they shall not require their laborers to work daily? The city can certainly prescribe the quality of material which contractors shall use in constructing public buildings and bridges; and it will hardly be questioned that the city could forbid the use of material which cost less than given prices, in order to secure first-class material. By parity of reasoning,

why can not the city, in order to have its public works done by first-class laborers, provide that contractors should pay given wages to the laborers employed by them? We can not hold that the mayor and general council, in enacting this ordinance for the making of these public improvements, are bound to permit the employment of laborers on its public works at the lowest possible obtainable wages, and at the longest possible hours of labor. It may be that higher wages and shorter hours would produce better results, from a financial point of view, than lower wages and longer hours. Work done during eight hours may be much better done than work done from sun to sun. High wages and short hours may result in procuring the best laborers, and in consequence the best work. It may be that long hours and low wages would give better financial and material results to the city than shorter hours and higher wages. On these questions political economists are at variance. Whether the city shall reap the benefits which flow from the stern law of supply and demand, when its operation pinches labor, is a matter lying largely within the administrative policy of the city, with which the courts will not interfere unless the acts of the mayor and general council are ultra vires, or fraudulent and corrupt. In *Wells* v. *Atlanta*, 43 *Ga.* 67, this court held: "When a municipal corporation is, by its proper officers, acting within the scope of its powers, a court of equity will not, at the instance of the taxpayers of the corporation, interfere to restrain or control its action, on the ground that the same is unwise or extravagant. To sustain such interference, it must appear either that the act is ultra vires or fraudulent and corrupt." In *Danielly* v. *Cabaniss*, 52 *Ga.* 211, it was ruled: "When a town council is authorized by law to do a particular act at its discretion, the courts will not control this discretion, and inquire into the propriety, economy, and general wisdom of the undertaking, or into the details of the manner adopted to carry the project into execution." "A municipal corporation is a minor State. Through its proper officials it exercises those attributes of sovereignty which the legislature, for the convenience of the State at large, in the administration of purely local affairs confers upon such a corporation." *City of Atlanta* v. *Holliday*, 96 *Ga.* 546, 553 (23 S. E. 509).

With the wisdom or folly of this ordinance the courts have nothing to do, if the mayor and general council of Atlanta had the

authority to pass it, if it is not unreasonable, and if it does not violate the constitution of this State or the constitution of the United States. This ordinance may be a venture in municipal fraternalism which may prove of great benefit to the city, or it may be vicious or mischievous paternalism, which, like the cry of the Roman populace for "bread and the circuses," will finally lead to the overthrow of our form of government. With these matters and considerations, however, the courts have nothing to do. The responsibility therefor rests upon the mayor and general council of the city, and not upon the courts. If that body fails to do what may be deemed wise and just, an appeal from that body lies to the voters. If unwise or vicious legislation is enacted by that body, and remains upon the municipal statute book, the fault is upon the voters. Its continuance is due to the unpardonable lethargy of the people. The courts can not strike down legislation, whether State or municipal, unless it plainly and palpably violates some provision of the Federal or State constitution, or municipal ordinances unless enacted without power of the city to pass them, or in contravention of State statutes or public policy. Atkin v. Kansas, 191 U. S. 207 (24 Sup. Ct. 124, 48 L. ed. 148) ; Milwaukee v. Raulf, 164 Wis. 172 (159 N. W. 819).

The insistence that this ordinance undertakes to establish a public policy for the State is not well taken. It does not fix an eight-hour day and a minimum wage for all of the employees of the city, but only undertakes to prescribe the terms and conditions upon which the city will erect its public buildings and bridges or repair the same, or contract with others for doing such work. It is thus dealing with purely local matter. In this respect the case differs from Lennane v. Detroit, 225 Mich. 631 (196 N. W. 391), in which the city undertook to fix an eight-hour service day and a minimum wage for all of the employees of the city. The case differs also from *City of Atlanta v. Stein,* 111 *Ga.* 789 (supra), in which this court held that an ordinance which prescribed that all work of a designated kind should be given exclusively to persons of a specified class was ultra vires and illegal, because it tended to encourage monopoly and defeat competition. The ordinance now under consideration does not so prescribe. Under it public work can be given to persons of all classes; all persons can contract to do the work for the city.

For this reason this ordinance does not encourage monopoly and defeat competition. So I am of the opinion that this ordinance is not ultra vires, but that the city, under its charter, had the power to enact it.

2. The next question for consideration is whether this ordinance violates the due-process clauses of the State and Federal constitutions. In the first place, the urgent insistence is made that this ordinance deprives contractors who undertake to erect public buildings and bridges, or to repair the same for the city, of the liberty of contract which is secured by the above constitutional provisions, and that the taxpayers of the City of Atlanta are thereby deprived of their property without due process of law. Does this ordinance deprive the plaintiffs of the freedom of contract which is safeguarded by the above constitutional provisions? The right to contract about one's affairs is a part of the liberty of the individual, protected by these provisions. Butchers Union etc. Co. *v.* Crescent City etc. Co., 111 U. S. 746 (4 Sup. Ct. 652, 28 L. ed. 585); Allgeyer *v.* Louisiana, 165 U. S. 578 (17 Sup. Ct. 427, 41 L. ed. 832); Lochner *v.* New York, 198 U. S. 45 (25 Sup. Ct. 539, 49 L. ed. 937); Adair *v.* United States, 208 U. S. 161 (28 Sup. Ct. 277, 52 L. ed. 436); Muller *v.* Oregon, 208 U. S. 412 (28 Sup. Ct. 324, 52 L. ed. 551, 13 Ann. Cas. 957); Coppage *v.* Kansas, 236 U. S. 1 (35 Sup. Ct. 240, 59 L. ed. 441, L. R. A. 1915C, 960); New York Life Insurance Co. *v.* Dodge, 246 U. S. 357 (38 Sup. Ct. 337, Ann. Cas. 1918E, 593); Adkins *v.* Children's Hospital, 261 U. S. 525, 545 (43 Sup. Ct. 394). Within this liberty are contracts of employment of labor. Generally in making such contracts the parties have an equal right to obtain from each other the best terms they can, as the result of bargaining. The right of a person to sell his labor under such terms as he deems proper is the same as the right of the purchaser of labor to prescribe the conditions upon which he will accept such labor. The employer and the employee have equality of right; and any legislation which disturbs that equality is generally an arbitrary interference with the liberty of contract, which no government can justify. Included in the right of personal liberty and the right of private property is the right to make contracts for the acquisition of property. Chief among these contracts is that of personal employment, by

which labor and other services are exchanged for money or other things of value. If this right be stricken down or arbitrarily interfered with, there is a substantial impairment of the liberty secured by the above constitutional provisions. This right is as essential to the laborer as to the capitalist, to the poor as to the rich. A majority of the people have no other honest way to begin the acquisition of property, save by working for money. Adair v. United States, Coppage v. Kansas, Adkins v. Children's Hospital, supra.

It is questionable whether the liberty protected by Magna Charta, and by the fourteenth amendment to the constitution of the United States, was ever intended to cover freedom of contract to the extent to which it has been carried by the decisions of the United States Supreme Court and other tribunals; but we are not called upon in this case to pass on this matter. One thing is clear, and that is there is no absolute freedom of contract. Atlantic Coast Line R. Co. v. Riverside Mills, 219 U. S. 186 (31 Sup. Ct. 164, 55 L. ed. 167, 31 L. R. A. (N. S.) 7). In the advancing complexity of our civilization, the regulation and curtailment of the right of free contract is rapidly becoming the rule, and freedom of contract the exception. If the State and Federal governments continue to interfere in and regulate human affairs, and to establish bureaus and commissions, with authority to make regulations which have the force of law, freedom of contract will be largely abolished. Statutes which prohibit or regulate contracts, or which have that effect, are so numerous, that a mere recital of them would fill a volume. All contracts touching matters falling within the range of the police power are subject to modification or annulment by the exercise of that power of the State or its instrumentalities. So Congress, regulating commerce among the States and foreign nations, may make impossible the enforcement of contracts between carriers and shippers, although they were valid when made. L. & N. R. Co. v. Mottley, 219 U. S. 467 (31 Sup. Ct. 265, 55 L. ed. 297, 34 L. R. A. (N. S.) 671). So in Union Dry Goods Co. v. Georgia Public Service Corporation, 142 Ga. 841 (83 S. E. 946, L. R. A. 1916E, 358), this court held that "Constitutional restraints upon the impairment of the obligation of contracts do not prevent the State from exercising such powers as are necessary in the exercise

of its sovereign right to protect the lives, health, morals, comfort, and general welfare of the public, though contracts previously entered into between individuals may thereby be affected."

But I can not see how freedom of contract is involved in this case. No contractor or other person is prevented from bidding upon any public works under this ordinance. It is true that they will have to take into consideration, in making their bids, the terms of this ordinance as to hours of work and the wages of laborers thereby prescribed. But there is a difference between facility and freedom of contract. Under this ordinance, all laborers are free to contract for labor upon these public works. No class of laborers is excluded. The Supreme Court of the United States, in construing the fourteenth amendment to the constitution of the United States, has declared that "It belongs to the State, as guardian and as trustee for its people, and having full control of its affairs, to prescribe the conditions upon which it will permit public work to be done on its behalf, or on behalf of its municipalities." Atkin *v.* Kansas, supra; Heim *v.* McCall, 239 U. S. 175, 191 (36 Sup. Ct. 78, 60 L. ed. 206, Ann. Cas. 1917B, 287). The same rule has been applied to statutes relating to contracts for the performance of public work for the United States government. Ellis *v.* United States, 206 U. S. 246 (27 Sup. Ct. 600, 51 L. ed. 1047, 11 Ann. Cas. 589). In the case first cited the court was dealing with a State statute which fixed eight hours for a day's work, and a minimum wage for laborers on the public works of the State or its municipalities. It was held: "No court has authority to review its action in that respect. Regulations on this subject suggest only considerations of public policy. And with such considerations the courts have no concern." This construction of the fourteenth amendment is conclusive upon this court, and I am not at liberty to give a different construction to that amendment, even if I were so inclined, which I am not. While this court is at liberty to give a different construction to the same principle embodied in the State constitution, I do not think that the provision of our State constitution should receive a different construction from that placed upon the fourteenth amendment by the highest court of the nation.

In the next place it is urged that this ordinance deprives the

plaintiffs and other taxpayers of the City of Atlanta of their property without due process of law. It is insisted that the fixing of eight hours as a day's work, and prescribing the standard of wages set out in this ordinance, will increase the cost to the city of public buildings and bridges and repairs thereon, which will necessitate higher taxes which the taxpayers will have to meet, and that in consequence and in this way the taxpayers of the city will be deprived of their property without due process of law. There are decisions which tend to sustain this view. In Rodgers *v.* Coler, 166 N. Y. 1 (59 N. E. 716, 52 L. R. A. 814, 82 Am. St. R. 605), it was held that a statute of New York which deprived the State, and one contracting with it to perform public work, of the power to contract for the necessary labor at the best rates obtainable, violated the principles of civil liberty and the constitutional provisions protecting private property. That decision was by a divided court. Two Justices dissented. Chief Justice Parker pointed out that the question had been differently decided from the opinion of the majority, in Clark *v.* State, 142 N. Y. 101 (36 N. E. 817), in which it was held: "There is no express or implied restriction to be found in the constitution upon the power of the legislature to fix and declare the rate of compensation to be paid for labor or services performed upon the public works of the State. That legislation is doubtless open to criticism from the standpoint of sound policy and expediency, but the courts have nothing to do with these questions so long as it is not in conflict with the constitution; and we think that a general law regulating the compensation of laborers employed by the State or by officers under its authority, which disturbs no vested right or contract, was within the power of the legislature to enact, whatever may be said as to its wisdom or policy." In Ryan *v.* New York, 177 N. Y. 271 (69 N. E. 599), the decision in the case last cited was followed, and the court held that a statute providing that wages for a legal day's work to all classes of laborers on public works should not be less than the prevailing rate for a day's work at the same trade and in the same locality was constitutional. In Street *v.* Varney Electrical Supply Co., 160 Ind. 338, 66 N. E. 895 (61 L. R. A. 154, 98 Am. St. R. 325), it was held that a statute fixing the minimum rate of compensation to be paid to a particular class of laborers employed

upon any public work of the State, counties, cities and towns, without regard to the actual value of such labor, or the rate paid by other persons for the same kind of labor in the same vicinity, was unconstitutional. The decision, in the case just cited, followed that in the case of Rodgers *v.* Coler, supra, and was based upon the ground that it was unconstitutional in that it violated freedom of contract, was class legislation, and beyond the power of the legislature to enact.

In Lennane *v.* Detroit, supra, the Supreme Court of Michigan dealt with a statute fixing the hours of labor and minimum wages for skilled and unskilled labor. The statute dealt with in that case fixed the work-day of all employees of the city. The court held that the fixing of eight hours for a day's work, and minimum wages, was a matter of public policy which a municipality could not declare. In Holden *v.* Hardy, 169 U. S. 366 (18 Sup. Ct. 383, 42 L. ed. 780), a statute limiting the hours of work in mines was held constitutional. The decision in that case was based upon the fact that the health of miners would be affected by long hours of labor underground. In Lochner *v.* New York, 198 U. S. 45 (supra), it was held that a statute restricting the employment of persons in bakeries to ten hours per day was an arbitrary and unreasonable interference with the liberty of contract secured by the fourteenth amendment. In Muller *v.* Oregon, 208 U. S. 412 (supra), a statute limiting the hours of labor for women was upheld as constitutional. The court sustained the statute upon the ground that there was a natural limit to women's physical strength, and upon the likelihood that longer hours would therefore injure their health. This ruling was followed in Riley *v.* Massachusetts, 232 U. S. 671 (34 Sup. Ct. 469, 58 L. ed. 788); Miller *v.* Wilson, 236 U. S. 373 (35 Sup. Ct. 342, 59 L. ed. 628, L. R. A. 1915F, 829); Bosley *v.* McLaughlin, 236 U. S. 385 (35 Sup. Ct. 345, 59 L. ed. 632). In Bunting *v.* Oregon, 243 U. S. 426 (37 Sup. Ct. 435, Ann. Cas. 1918A, 1043), the court sustained a law limiting the hours of labor of any person, whether man or woman, working in any mill, factory, or manufacturing establishment, to ten hours per day, with a proviso that if they worked beyond that limit they would be paid not less than fifty per cent. more than the usual wage for the extra time. In Adkins *v.* Children's Hospital, supra, the court held that the minimum

wage act of Congress, which authorized the fixing of minimum wage standards for adult women in any occupation in the District of Columbia, such standards to be based wholly upon what the board and its advisers might find to be an adequate wage to meet the necessary cost of living for women workers in each particular calling, and to maintain them in good health and protect their morals, was an unconstitutional interference with the liberty of contract. From that decision the Chief Justice and two Associate Justices dissented.

But the authority of the State or its municipalities to generally fix the number of hours which will constitute a day's work, or to generally prescribe a minimum wage, is not now for decision by this court, and I do not pass thereon. We have seen that "it is within the power of the State, as guardian and trustee for its people, and having full control of its affairs, to prescribe the conditions upon which it will permit work to be done on its behalf, or on behalf of its municipalities," and that in prescribing these conditions the State may fix the hours of work to be performed upon public work and the compensation of laborers employed thereon, whether the work be done by the State itself, or by municipalities themselves, or by contractors. So an act of Congress, limiting the hours of laborers and mechanics employed by the United States, or any contractor or subcontractor, upon any of the public works of the United States, to eight hours per day, except in cases of extraordinary emergency, and imposing a penalty for its violation, was held constitutional and within the powers of Congress. Ellis v. United States, supra. The ruling in Atkin v. Kansas, supra, was followed in Heim v. McCall, supra. In the first division of this opinion I have shown that the City of Atlanta has full power to pass all ordinances relating to public buildings; and I construe this power to include the right of the city to fix the hours which shall constitute a day's labor, and prescribe the minimum wages which shall be paid for skilled labor employed in the erection of public buildings and bridges or in repairs thereon, where the work is done by the city itself or by contractors for it. So I am of the opinion that this ordinance is not illegal or unconstitutional upon any of the grounds upon which its legality and constitutionality are attacked.

Upon the constitutionality of statutes prescribing hours of

labor and minimum wages, see Bopp *v.* Clark, 165 Iowa, 697 (147 N. W. 172, 52 L. R. A. (N. S.) 493, Ann. Cas. 1916E, 417), fixing the minimum salary of teachers in the public schools; Byars *v.* State, 2 Okla. Crim. 481 (102 Pac. 804), dealing with a statute limiting the hours of work and fixing the minimum wages of laborers upon public works; Wilson *v.* New, 243 U. S. 332 (37 Sup. Ct. 298, L. R. A. 1917E, 938, Ann. Cas. 1918A, 1024), holding that Congress has power to enact a statute prescribing a standard of minimum wages for employees of carriers engaged in interstate commerce, not confiscatory in effect but obligatory upon both parties, to be enforced for a reasonable time, in order that the calamity of a strike might be avoided, and that opportunity might be afforded the contending parties to agree upon and establish a standard of their own; Milwaukee *v.* Raulf, 164 Wis. 172 (159 N. W. 819), holding that the power of the State or municipality to limit the hours of labor upon public works is one incident to and inherent in its right to contract for public work and to specify the conditions upon which labor upon public works shall be performed; Wagner *v.* Milwaukee, 177 Wis. 419 (188 N. W. 487), holding that, in the absence of constitutional restrictions, the legislature may enact a law providing a minimum wage for day-laborers employed by the city or any officer thereof; Spokane Hotel Company *v.* Younger, 113 Wash. 359 (194 Pac. 595), holding that a statute of Washington, creating an industrial welfare commission, and authorizing it to fix minimum wages for women, is not invalid as working a deprivation of property without due process of law; Williams *v.* Evans, 139 Minn. 32 (166 N. W. 504, L. R. A. 1918F, 542), holding that the minimum-wage act of Minnesota is constitutional. While the decisions of courts of high authority are divided upon the question involved in this case, I think the better rule is that a municipality, when clothed by the legislature with full power and authority to pass all by-laws and ordinances respecting public buildings and public bridges and the repair of the same, can prescribe by ordinance the conditions upon which it will itself do or permit public work in its behalf, including the power to fix hours of labor and wages for labor done by persons employed by itself, or by contractors in its behalf, on its public works.

I do not mean to be understood as holding that the mayor and general council of the City of Atlanta are possessed with unlimited power in this matter. They must exercise this authority within a reasonable and fair compass. They are servants and not masters of the people. The offices they hold are offices of public trust, and they are trustees who are bound in their official action to do what is best for the welfare of the city and all of its inhabitants. While, if they act within the scope of the authority conferred upon them by law, the courts can not interfere, they are still amenable to the people for unwise, unfair, or mischievous legislation or contracts. I do not mean to approve the wisdom of this ordinance. That is matter which does not fall within the purview of the courts, and for this reason I do not express any opinion upon this aspect of the ordinance. For the above reasons I feel constrained to dissent from the conclusions reached by the majority.