## 32906. CITY OF ATLANTA v. ASSOCIATED BUILDERS & CONTRACTORS OF GEORGIA, INC. et al.

MARSHALL, Justice.

The question which this case presents concerns the constitutionality of an ordinance of the City of Atlanta (Section 31-41.11 as amended by Section 31.47(a), Code of Ordinances of the City of Atlanta) requiring workers on construction projects in excess of $10,000, which are funded by the city, to be paid a minimum wage which corresponds to the prevailing wage scale prescribed by the federal Davis-Bacon Act. 40 USC § 276 (a) et seq. The State of Georgia has established a minimum wage law requiring every employer, with certain exemptions not applicable here, to pay all covered employees a minimum wage which shall not be less than $1.25 per hour. Code Ann. § 54-1202 (Ga. L. 1970, p. 153). The Fulton Superior Court rendered a declaratory judgment that the city ordinance was in violation of Art. I, Sec. II, Par. VII of the State Constitution of 1945 (Code Ann. § 2-401; § 2-207

under the Constitution of 1976), which declares that no special law shall be enacted in any case for which provision has been made by an existing general law. The Court of Appeals affirmed the trial court in *City of Atlanta v. Associated Builders &c. of Ga.,* 143 Ga. App. 115 (237 SE2d 601) (1977). We brought this case up on a writ of certiorari, and we reverse.

We really face two questions in this appeal: the specific question concerning the constitutionality of the municipal ordinance under attack and a broader question concerning the construction of the state constitutional provision under which it was struck down. Had Hamlet been the writer of this opinion, he might have framed this latter issue for decision thusly: Conflict or Preemption? That is the question. In other words, the question is whether that constitutional provision merely prohibits conflicts between general and special laws or whether it prohibits altogether the enactment of a special law when there is preemption by the state in that area of regulatory activity. The prior cases in this area are irreconcilable, and if there is any common analytical thread running though them which can be extracted therefrom and used as the basis for rendering a decision in a subsequent case, it escapes this reader's detection. See, e.g., *City of Atlanta v. Hudgins,* 193 Ga. 618 (19 SE2d 508) (1942) and cits. The latest, and therefore controlling, pronouncement on this point is found in *Powell v. Bd. of Commrs. &c. of Gwinnett County,* 234 Ga. 183 (214 SE2d 905) (1975), which held that a local law prohibiting issuance of a beer and wine license to a business within 1,700 feet from a school was not rendered unconstitutional because of the existence of a state law making it illegal for any person to sell beer or wine within 100 yards of any school. This court stated, "[The state law] establishes only a 'minimum distance' for the retail sale of wine and beer from a school or schoolhouse. We do not interpret this statutory restriction to mean that a local governing authority cannot establish, pursuant to its police power authority, a distance restriction that is greater than three hundred feet. We therefore hold that the ordinance is not unconstitutional." Id., p. 185.

Therefore, the question under *Powell* is whether

there is a genuine conflict between the special and general law, and the reasoning employed in that case mandates the conclusion that there is no unconstitutional conflict in this case between the state minimum wage law and the city ordinance. The local minimum wage law does not detract from or hinder the operation of the state law, but rather it augments and strengthens it.

*Wilson v. City of Atlanta,* 164 Ga. 560 (139 SE 148) which is in direct conflict with our holding today, is expressly overruled. Justice Hines, dissenting in the *Wilson* case, 164 Ga. at p. 564, expressed certain sentiments which we repeat here: "With the wisdom or folly of this ordinance the courts have nothing to do, if the mayor and general council of Atlanta had the authority to pass it, if it is not unreasonable, and if it does not violate the constitution of this State or the constitution of the United States. This ordinance may be a venture in municipal fraternalism which may prove of great benefit to the city, or it may be vicious or mischievous paternalism, which, like the cry of the Roman populace for 'bread and the circuses,' will finally lead to the overthrow of our form of government. With these matters and considerations, however, the courts have nothing to do. The responsibility therefor rests upon the mayor and general council of the city, and not upon the courts. If that body fails to do what may be deemed wise and just, an appeal from that body lies to the voters. If unwise or vicious legislation is enacted by that body, and remains upon the municipal statute book, the fault is upon the voters. Its continuance is due to the unpardonable lethargy of the people. The courts can not strike down legislation, whether State or municipal, unless it plainly and palpably violates some provision of the Federal or State constitution, or municipal ordinances unless enacted without power of the city to pass them, or in contravention of State statutes or public policy. Atkin v. Kansas, 191 U. S. 207 (24 Sup. Ct 124, 48 L.ed. 148); Milwaukee v. Raulf, 164 Wis. 172 (159 N.W. 819)."

*Judgment reversed. All the Justices concur, except Hill, J., who concurs specially, and Jordan and Bowles, JJ., who dissent.*

ARGUED NOVEMBER 16, 1977 — DECIDED
FEBRUARY 7, 1978.

*Ferrin Y. Mathews, Isabel Gates Webster, Mary Carole Cooney,* for appellant.

*Spencer Gandy, John Walton Henderson, Jr., Michael C. Fowler,* for appellees.

HILL, Justice, concurring specially.

In my view, in the absence of a general law prescribing municipal contracting requirements, a municipality is free to impose conditions upon those who would contract with it without violating the special law prohibition of Code Ann. § 2-207.

BOWLES, Justice, dissenting.

The City of Atlanta ordinance under attack in this case was declared to be unconstitutional by the trial judge and by the Court of Appeals of this state. Now a majority of this court has voted to reverse the Court of Appeals; thus holding that the ordinance in question meets constitutional muster. We are confined to the narrow question on which we granted certiorari, that being whether or not the ordinance in question violates Art. I, Sec. IV, Par. I (Code Ann. § 2-401) of the 1945 Georgia Constitution. That single issue will be addressed in this dissent, although the ordinance in question may be otherwise constitutionally infirm.

There are three paragraphs of the ordinance I deem necessary to quote here, namely: "Section 31-41.3. Definitions (b). The word contractor whenever used in this ordinance is hereby defined as any person, partnership, corporation, association or joint venture which has been awarded a public contract and including every subcontractor on such contract. (c) The word subcontractor whenever used in this ordinance is hereby defined as any person, partnership, corporation, association, or joint venture which supplies any of the work, labor, services, supplies, equipment, materials or any combination of the foregoing under contract with the contractor on a public contract. Section 31-41.11.

Minimum wage requirements. Where a construction project exceeds $10,000, the minimum wage paid shall correspond to the prevailing wages prescribed in the federal Davis-Bacon Act and such scale of prevailing wages to be paid shall be posted by the contractor in a prominent and easily accessible place at the site of the work."

Thus, by ordinance, wages paid on any contract or subcontract performed for the City of Atlanta where the amount involved exceeds $10,000 shall meet the minimums of the federal Davis-Bacon Act. The ordinance is overly broad, in my opinion, and is in direct conflict with the minimum wage law enacted by the legislature of this state, Code Ann. § 54-1202, and thus violates the constitutional prohibition of Art. I, Sec. II, Par. I of the 1945 Georgia Constitution (Code Ann. § 2-401 which is now included in the 1976 Constitution as Code Ann. § 2-207).

The minimum wage law adopted by our legislature provides for a minimum wage of $1.25 per hour. In these days of inflation this appears to be strikingly low, but that is not the point. The legislature can increase this minimum at any time it elects to do so. The right and power to set a minimum wage has been undertaken by the legislature of this state for the state as a whole, and having done so, a municipal ordinance cannot be enacted increasing the minimum set by the legislature.

Under the ordinance in question the word contractor includes all subcontractors and every subcontractor, includes by legal definition, any person, firm, corporation, etc. who supplies any of the work, labor, equipment, materials, etc. Thus, the employees of the contractor are not only subject to the Davis-Bacon minimums but wages paid employees of every equipment supplier and every materialman must also comply according to the city ordinance. Subcontractors furnishing material and equipment under this definition could include large nationwide corporations, sand and gravel people in nearby counties, lumber companies operating in other parts of the state, or in other states, prefabricators of components, and others. It matters not, if there is a supplier to any contractor on the projects he must comply

with the Davis-Bacon Act minimum wage provisions. Thus, the City of Atlanta has attempted to legislate by ordinance what must be paid to such employees everywhere. The coverage is extremely broad, and in my opinion, beyond the authority of the city to enact.

A similar ordinance was declared unconstitutional in the case relied on by the majority, *Wilson v. City of Atlanta,* 164 Ga. 560 (139 SE 148) (1927), but for a different reason. That decision was approved by all the justices of this court except Justice Hines who wrote a twelve page dissent which I will not attempt to quote here but in which he concluded the court was not called upon to determine whether the state or a city could generally fix the hours of labor to be performed daily by laborers and whether the state or a city could generally fix a minimum scale of wages to be paid by employers to their employees. He said, "The narrow question for our decision is this: Can the city in erecting its public buildings and bridges and in making repairs thereon, when the work is done by the city · itself, or when it is done *by contractors* employed by the city, fix the number of hours which its employees or the employees of its contractors shall be required to work on such work daily, and prescribe the wages which the city or its contractors shall pay to employees in doing such work?"

The question there was considerably narrower in Justice Hines' opinion, and at that time there was no legislative enactment by the state setting a minimum wage. The two additional problems in the present case, i.e., extremely broad coverage, and legislative enactment in the field, could well have changed Justice Hines' minority view.

I not only feel that the ordinance in question violates or comes in conflict with the general law of this state on this subject matter, and thus violates our constitutional prohibition in that regard, but I feel that *Wilson v. City of Atlanta,* 164 Ga. 560, supra, is sound and should not be overruled. There are more interests than one to be protected. Where the state has entered the field and adopted statewide law on the subject, I do not think the City of Atlanta in fairness to all of its citizens can do so. *Atlanta & W. P. R. Co. v. Underwood,* 218 Ga. 193(2) (126

SE2d 785) (1962) is directly in point.[1]

*Powell v. Bd. of Commrs. of Gwinnett County,* 234 Ga. 183 (214 SE2d 905) (1975), on which the majority opinion relies, is clearly distinguishable. That case involved the authority of Gwinnett County to issue beer and wine licenses within its borders. It adopted an ordinance saying that *no license* shall be issued where an entrance to a place of business for the retail or wholesale of beer and wine is located within 1,700 feet from the entrance or main structure of any school or any church. The state law, Code Ann. § 58-724.1, made it a crime for any person to sell either beer or wine at a place within 100 yards of any school or schoolhouse in this state. The state was not setting standards for granting licenses or for sale of beer and wine, but was setting criminal standards for the illegal sale of beer and wine within a certain distance of any school. Indeed, the county could have elected not to license beer and wine at all in the county should its citizens have decided to do so. Justice Gunter points out that the state law does not set any regulatory distance for the sale of beer and wine with respect to churches, and therefore, that part of the ordinance relating to churches is not in conflict with any general law. The decision specifically holds: "We do not interpret this statutory restriction to mean that a local governing authority cannot establish, *pursuant to its police power authority,* a distance restriction that is greater than 300 feet." (Emphasis supplied.) For example, the governing authority of Gwinnett County could have restricted the

---

[1] See also *City of Atlanta v. Hudgins,* 193 Ga. 618 (1) (19 SE2d 508) (1942); *Green v. City of Atlanta,* 162 Ga. 641, 652 (135 SE 84) (1926); *City of Atlanta v. Stein,* 111 Ga. 789 (36 SE 932) (1900). Code Ann. § 69-1017 — "Same; home rule for municipalities (a) The governing authority of each municipality shall have legislative power to adopt clearly reasonable ordinances, resolutions or regulations relating to its property, affairs and local government for which no provision has been made by general law and which are not inconsistent with the Constitution or any charter provision applicable thereto..."

licensing of sale of beer and wine to any reasonable area it chose to so designate. As I read the decision, it stands for the rule that the police power authority is a power and authority granted in regard to licensing of beer and wine and really has nothing to do with the criminal sanctions imposed by the state in the sale of the beer and/or wine within certain areas.

To hold where the state has entered an area of the law and has set a minimum, a municipality may set a higher minimum is not the sense of the Gwinnett County case in my opinion. As previously stated, we considered the question on the narrow grounds contained in the grant of certiorari, and although the judgment of the Court of Appeals stands reversed, I do not conclude that that court is prevented from considering the other grounds presented to it such as unreasonableness as a matter of fact, etc. In my opinion, the judgment of the trial court, and the decision of the Court of Appeals were both fundamentally sound and correct, and I would affirm.

I am authorized to state that Justice Jordan joins in this dissent.