636 F.2d 1084
 The CITY OF ATLANTA, a Georgia Municipality, and Maynard
Jackson, Individually and as Mayor of the City for
Atlanta, Plaintiffs-Appellants-Cross Appellees,
and
Fulton County, A Political Subdivision of the State of
Georgia, etc., et al.,
Intervenors-Appellants-Cross Appellees,
v.
The METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY, etc.,
Defendant-Appellee- Cross Appellant.
 No. 80-7514.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit B
 Feb. 13, 1981.
 David E. Betts, Robert G. Young, Atlanta, Ga., for Fulton Co.
 Ralph Witt, Ferrin Mathews, Atlanta, Ga., for City of Atlanta and Jackson.
 John S. Graettinger, Jr., Atlanta, Ga., for Ethel Mathews.
 Kutak, Rock & Huie, John R. Lowery and W. Stell Huie, Atlanta, Ga., for defendant-appellee-cross appellant.
 Appeals from the United States District Court for the Northern District of Georgia.
 Before MORGAN, ANDERSON and THOMAS A. CLARK, Circuit Judges.
 LEWIS R. MORGAN, Circuit Judge:
 
 
 1
 The City of Atlanta and Maynard Jackson, individually and as Mayor of Atlanta, brought an action seeking to enjoin the Metropolitan Atlanta Rapid Transit Authority (MARTA) from implementing a proposed fare increase for the MARTA bus/rail system.[1] The plaintiffs, now appellants, challenged this increase, alleging a number of constitutional, statutory, and contractual violations by the defendant MARTA. Fulton County, Dorothy Bolden, the National Domestic Workers Union of America, Ethel Mathews, and the National Welfare Rights Organization were permitted to intervene as plaintiffs; DeKalb County was permitted to intervene as a defendant.
 
 
 2
 The District Court for the Northern District of Georgia granted a temporary restraining order enjoining the fare increase and scheduled a hearing on appellants' motion for a preliminary injunction. Following a hearing and the submission of supplemental briefs by the parties, the district court determined that appellants had failed to demonstrate a substantial likelihood of success on the merits. Accordingly, the court denied the motion for a preliminary injunction, dissolved the temporary restraining order, and entered its findings of fact and conclusions of law. The appellants appeal from the denial of the preliminary injunction, and MARTA cross-appeals from the denial of its motion for posting of security by the appellants. A panel of this court denied appellants' motion for a stay pending appeal but granted their request that the appeal be expedited. Finding no error requiring reversal in this case, we affirm the district court.
 
 I.
 
 3
 During the 1960s, serious traffic and mass transportation problems developed in the Atlanta metropolitan area. To alleviate these problems the Georgia General Assembly, pursuant to authority granted by an amendment to the Georgia constitution,[2] created MARTA as a "joint public instrumentality of the City of Atlanta and the counties of Fulton, DeKalb, Cobb, Clayton and Gwinnett." Metropolitan Atlanta Rapid Transit Act of 1965, § 4, 1965 Ga.Laws, p. 2243 et seq. (the MARTA Act). The legislature assigned MARTA the task of designing, purchasing, constructing, financing, and operating a rapid transit system for the Atlanta metropolitan area. MARTA Act § 7. MARTA was given "all powers necessary or convenient to accomplish" these purposes. Id. § 8. In particular, the legislature authorized MARTA to enter into contracts with the City of Atlanta and the named county governments for the performance of MARTA's public transportation services.
 
 
 4
 As originally enacted, the MARTA Act contemplated an eleven-member Board of Directors for the Authority: four members representing Atlanta, two representing Fulton County, two representing DeKalb County, one representing Cobb County, one representing Clayton County, and one representing Gwinnett County. Under the provisions of the Act, however, a local government could not be represented on the MARTA Board unless its voters approved a referendum authorizing participation in the transit authority. On June 16, 1965, the voters of Fulton, DeKalb, Clayton, and Gwinnett Counties approved further participation in MARTA, and the voters of Cobb County voted against further participation. Following the referenda the Georgia General Assembly confirmed participation in MARTA by the approving counties and the City of Atlanta. 1966 Ga.Laws, p. 3264. As a result, the original MARTA Board consisted of ten members.
 
 
 5
 On September 1, 1971, the City of Atlanta and Fulton, DeKalb, Clayton, and Gwinnett Counties entered into an agreement with MARTA for the purpose of commencing the construction and operation of the rapid transit system. This agreement, the Rapid Transit Contract and Assistance Agreement, was to be binding upon the local governments only after their voters gave their approval in a referendum. Voter approval of the rapid transit contract would, under the MARTA Act, permit a local government to levy a one percent sales tax within its geographical area. MARTA Act § 15. The contract and the consequent sales tax were approved by the voters of Fulton and DeKalb, which includes the City of Atlanta, but rejected by the voters of Clayton and Gwinnett. Nevertheless, representatives from Clayton and Gwinnett remained on the MARTA Board of Directors. The propriety of their membership on the Board is one of the issues in this case.
 
 
 6
 In 1976 the Georgia General Assembly amended section 6(a) of the MARTA Act to add four members to the MARTA Board of Directors. The Board's membership was increased by the addition of one representative from DeKalb County and three members, serving ex officio, representing the State of Georgia.[3] The plaintiffs argue that this change in the composition of the MARTA Board violated due process and equal protection and impaired the Rapid Transit Contract and Assistance Agreement executed by MARTA and the local governments.
 
 
 7
 The MARTA Act gives the Board of Directors the sole authority to determine transit fares. Section 9(c) provides that the Board "shall determine by itself exclusively" the fares to be charged for transit services. The Act further provides that "the function of the Board under subsection (c) and (d) shall not be delegated or exercised by any other person or body under any circumstances." MARTA Act § 9(e). The Board does not, however, have absolute free rein in exercising its rate-making function. Under section 9(c) of the Act the Board is required to establish such fares and transportation charges as shall be sufficient, when added to MARTA's revenues from other sources, to meet the Authority's financial obligations.[4] On the other hand, MARTA's official policy "is one of low fares, virtually removing any cost barrier to the use of the system."[5] The tension between these competing considerations is the basis for much of the controversy in this case.
 
 
 8
 In 1979 the Georgia General Assembly imposed certain budgetary and expenditure restraints upon MARTA in the operation of its rapid transit system. Section 9(h)(1) of the MARTA Act requires that at least thirty-five percent of the operating costs of the system must be derived from transit operating revenue i. e., from fare box income. Similarly, section 25(i) of the Act provides that no more than fifty percent of the annual proceeds of the one percent sales tax authorized by the Act may be used to subsidize the operating costs of the system. Plaintiffs allege that these amendments to the Act impair MARTA's obligations under the Rapid Transit Contract and Assistance Agreement and violate the Urban Mass Transit Act, 49 U.S.C. § 1604.
 
 II.
 
 9
 This court has identified four prerequisites to the extraordinary relief of preliminary injunction. The district court should issue the injunction only if the moving party bears the burden of establishing: (1) a substantial likelihood that the movant will ultimately prevail on the merits, (2) a substantial threat that the movant will suffer irreparable injury unless the injunction is issued, (3) that the threatened injury to the movant outweighs the harm the injunction may do to the defendant, and (4) that granting the injunction will not be adverse to the public interest. Canal Authority v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974). The grant or denial of a preliminary injunction rests in the sound discretion of the district court and, absent an abuse of this discretion, the court's decision will not be overturned on appeal. Vision Center v. Opticks, Inc., 596 F.2d 111, 114 (5th Cir. 1979).
 
 
 10
 In this case the district court denied the preliminary injunction after it determined that appellants had failed to establish a substantial likelihood that they would prevail on the merits. We have reviewed appellants' claims challenging the MARTA fare increase and conclude that the district court did not abuse its discretion in finding that these claims lack substantial merit. We will briefly discuss each of appellants' claims seriatim.
 
 
 11
 A. Due Process and Equal Protection Claims.
 
 
 12
 The City of Atlanta argues that the addition in 1976 of the three state officials to the MARTA Board of Directors deprived its citizens of due process and equal protection of the laws by "diluting" their representation on the Board. Similarly, Fulton County argues that the representatives from Clayton and Gwinnett counties were unauthorized to serve on the MARTA Board and consequently that its citizens were denied due process when the illegally constituted Board voted to increase transit fares.
 
 
 13
 MARTA is a "joint public instrumentality" created by the Georgia General Assembly to implement a mass transportation system in the Atlanta metropolitan area. The Authority is not simply an arm of the local governments or a combination of local governments but is a distinct corporate entity authorized to contract with the local governments. Camp v. MARTA, 229 Ga. 35, 39, 189 S.E.2d 56 (1972). The nature and function of MARTA, including the composition of its Board of Directors, is established by state law. MARTA Act § 6(a). The City of Atlanta has not questioned the legislature's authority to prescribe initially the structure and composition of MARTA's Board; instead, appellant mounts an unfocused attack on the legislature's right to change its mind and increase the number of representatives on the Board.
 
 
 14
 We find no federal or state constitutional provision that guarantees the citizens of Atlanta a certain proportional representation on the MARTA Board. MARTA is a creature of Georgia law established by state statute. As the creator of MARTA, the Georgia General Assembly was free to decide the number of representatives from each government unit participating in the system and whether the Board members would be appointed or elected. The City of Atlanta had no vested right to any particular number of representatives or right to dictate to the state how the Board should be constituted. Further, nothing in the MARTA Act or elsewhere precludes the legislature from increasing or decreasing the number of representatives who serve on the Board. We conclude that the addition of the three state officials to the MARTA Board did not infringe the constitutional rights of Atlanta's citizens.
 
 
 15
 We wish to point out that the one man one vote principle mandated under the equal protection clause does not aid the City of Atlanta in this case. In Sailors v. Board of Education, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967), the Supreme Court held that the one man one vote rule had no relevancy in a case where county school board officials were appointed rather than elected, especially since the board exercised essentially administrative rather than legislative powers. Under Georgia law the members of the MARTA Board are either appointed or serve ex officio none are elected by popular vote. Additionally, the MARTA Board can properly be characterized as an administrative body which does not exercise traditionally legislative powers.[6] Under Sailors, it was within the legislature's discretion to choose to appoint the MARTA Board rather than having its members popularly elected. This method of selecting Board members renders the one man one vote principle inapplicable.
 
 
 16
 In a separate but related argument, Fulton County contends that Clayton and Gwinnett Counties forfeited their right to representation on the MARTA Board when in 1971 they voted against the one percent sales tax used to fund the system.
 
 
 17
 Under section 6(b) of the MARTA Act, the local governments were given the option of initially declining membership on the Board and further participation in the Authority. In referenda held in June 1965, the voters of Fulton, DeKalb, Clayton, and Gwinnett Counties approved participation in MARTA. Thereafter the Georgia General Assembly confirmed participation by the approving counties and the City of Atlanta. In 1971 the counties participating in MARTA sought voter approval to enter into the Rapid Transit Contract and Assistance Agreement and consequent authorization to levy a one percent sales tax to help fund the transit system. Fulton and DeKalb voters approved and Clayton and Gwinnett voters disapproved the rapid transit contract.
 
 
 18
 Appellants argue that because Clayton and Gwinnett voters refused to approve the one percent sales tax in 1971, these counties are not entitled to membership on the Board. We find that the district court did not abuse its discretion in rejecting this argument. In no provision of the MARTA Act has the Georgia legislature required financial participation as a prerequisite to a county's representation on the MARTA Board. Section 25 of the Act states that each of the local governments "which shall ... enter into a rapid transit contract with (MARTA) ... shall (after voter approval) be authorized to levy a sales and use tax...." By its terms, this section permits but does not require financial participation by the local governments. Similarly, section 24 states that the Board and each local government "may negotiate and determine the extent of financial participation and the time or times such financial participation may be required" (emphasis added). A reasonable interpretation of these provisions, taking the Act as a whole, is that financial participation is expected of those counties that contract for MARTA services but is not essential to membership on the MARTA Board.
 
 
 19
 In conclusion, we see no merit to appellants' argument that the MARTA Act equates membership on the Board of Directors with financial participation in the Authority. Section 6 of the Act permitted any of the local governments initially to decline membership on the Board. Clayton and Gwinnett counties did not exercise their option to decline membership and, therefore, took their rightful place on the MARTA Board. While these counties do not contribute financially to the Authority, neither do they receive MARTA services within their geographical areas. The district court did not abuse its discretion in interpreting the Act to permit these counties to serve on the MARTA Board.
 
 
 20
 B. Breach of Contract.
 
 
 21
 Appellants argue that MARTA's decision to implement a fare increase without first seeking the approval of the participating local governments violated paragraph 4(d) of the Rapid Transit Contract and Assistance Agreement. That paragraph provides that MARTA may modify the contract or the Engineering Report incorporated therein "from time to time, with the approval of Fulton, DeKalb, Clayton, Gwinnett and Atlanta ... where such modifications, amendments and extensions amount to substantial deviations from the Engineering Report and this contract." Appellants assert that the proposed 100% fare increase clearly constitutes a "substantial deviation" from MARTA's policy of low fares expressed in the Engineering Report and, therefore, that failure to secure the local governments' approval breached the terms of the contract.
 
 
 22
 We agree with the district court that appellants have misconstrued the terms of the rapid transit contract. In paragraph 4(d) of the contract the parties recognized that because of the scope and complexity of the MARTA project, numerous unforeseen problems necessarily would arise during the "acquisition, construction and improvement" of the transit system. For this reason, the parties determined that MARTA should, in its discretion, be permitted to make "minor deviations" from the Engineers Report and the rapid transit contract. In addition, the parties agreed that MARTA could make "substantial deviations" provided the local governments approved the change.
 
 
 23
 It is clear from its language that this paragraph was not intended to address the question of fare increases. By its terms, the paragraph refers to changes that become necessary during the "acquisition, construction and improvement" of the transit system. The drafters' obvious purpose was to provide MARTA with some flexibility during the building stages of the project. The issue of fare increases is simply outside the subject matter of the paragraph.
 
 
 24
 Furthermore, nothing in the rapid transit contract conflicts with the MARTA Act provision that the Board of Directors is the sole authority for determining transit fares. The Act states that the Board "shall determine by itself exclusively" the fares to be charged for transit services and specifies that this function "shall not be delegated or exercised by any other person or body under any circumstances." The argument that a fare increase requires the approval of the local governments is inconsistent with both paragraph 4(d) and with the MARTA Act itself. The district court did not err in finding that this argument lacks substantial merit.
 
 
 25
 C. Impairment of Contract.
 
 
 26
 The Contract Clause prohibits the states from enacting any law "impairing the Obligation of Contracts." U.S.Const. art. I, § 10. Appellants allege that this constitutional provision was violated when the Georgia legislature enacted certain amendments to the MARTA Act increasing the membership of the Board of Directors and imposing budgetary and expenditure restraints on the Authority. Although related, these allegations of impairment of contractual obligations constitute distinct arguments and will be discussed separately.
 
 
 27
 1. In 1976 the Georgia General Assembly amended section 6(a) of the MARTA Act to add three state officials, serving ex officio, to the MARTA Board of Directors. In addition to their due process and equal protection challenges to this legislation, appellants contend that changing the membership of the Board without the approval of the contracting parties impaired the obligations of the Rapid Transit Contract and Assistance Agreement. Appellants devote little attention to this argument, offering no reasoning or authority in support of their position. Their economy of effort, though poor strategy, was warranted in this instance, for we find their assertion to be wholly without merit.
 
 
 28
 A preliminary question under Contract Clause analysis is whether the legislative action impaired or changed a specific contractual obligation. United States Trust Co. v. New Jersey, 431 U.S. 1, 17, 97 S.Ct. 1505, 1515, 52 L.Ed.2d 92 (1977). Appellants have failed to meet this threshold requirement. The Rapid Transit Contract and Assistance Agreement contains no covenant limiting the membership of the MARTA Board. Plainly, the amendment to the MARTA Act increasing the Board's membership could not impair a contractual obligation where no such obligation existed. The district court properly determined that this argument lacked substantial merit.
 
 
 29
 2. In 1979 the Georgia legislature amended the MARTA Act to require that at least thirty-five percent of the operating costs of the system be derived from fare box income, § 9(h)(1), and to require that no more than fifty percent of the one percent sales tax revenue could be used to subsidize operating expenses, § 25(i). Appellants allege that these budgetary and expenditure restraints impair obligations undertaken by MARTA in the Rapid Transit Contract and Assistance Agreement. We conclude that the district court did not abuse its discretion in rejecting this claim.
 
 
 30
 The Engineering Report incorporated in the rapid transit contract states that MARTA's "policy is one of low fares, virtually removing any cost barrier to the use of the system." Appellants interpret this statement as a specific covenant by MARTA to maintain low transit fares. Appellants then argue that the subsequent amendments to the MARTA Act impair this obligation by requiring a fare which is not low and, therefore, is a barrier to the use of the system.
 
 
 31
 The flaw in appellants' argument is their initial premise that MARTA contractually obligated itself to keep fares "low." As the district court found, the provision of the Engineering Report discussing transit fares is termed a statement of policy and not a promise or covenant by the Authority. This interpretation is bolstered by language in the rapid transit contract itself. In paragraph 1(d) of the contract MARTA specifically covenants to "prescribe, revise and collect such rates, fees and charges for transportation so that, together with any other income and available funds, it will be able to fulfill its budgeted obligations." The commitment to low fares, though official policy, is subordinate to this express contractual obligation to maintain a balanced budget.[7] Furthermore, in paragraph 1(e) MARTA specifically covenants to "comply with all pertinent laws now in existence or hereafter enacted which relate to its budget or budgeting procedure." In this provision the parties clearly contemplated future amendments to the MARTA Act and recognized MARTA's duty to comply with those amendments. Construing the contract as a whole, we find that the district court did not abuse its discretion in rejecting appellants' impairment argument.
 
 
 32
 D. State Constitutional Violation.
 
 
 33
 Appellants next contend that the MARTA Act amendment permitting only fifty percent of sales tax revenue to be used for operating expenses violates the "supplementary home rule" provision of the Georgia constitution. Ga.Const. art. IX, § 4, para. 2 (1976), Ga.Code Ann. § 2-6102. As the district court found, this argument lacks substantial merit.
 
 
 34
 Section 2-6102, one of Georgia's "home rule" provisions,[8] authorizes county and municipal governments to exercise fifteen enumerated powers, including the power to provide public transportation services. In addition, the powers of "taxation and assessment" are granted to local governments that choose to provide any of the enumerated services. Appellants contend that this constitutional power to fund transportation systems through taxation was infringed by the MARTA Act amendment limiting the amount of sales tax revenue that could be used to subsidize operating costs. MARTA Act § 25(i).
 
 
 35
 After vesting local governments with fifteen specified powers, the Georgia constitution proceeds to reserve to the General Assembly the power to regulate, restrict, or limit the exercise of those powers:
 
 
 36
 (N)othing contained within this Paragraph shall operate to prohibit the General Assembly from enacting general laws relative to the above subject matters or to prohibit the General Assembly by general law from regulating, restricting or limiting the exercise of the above powers, but, the General Assembly shall not have the authority to withdraw any such powers.
 
 
 37
 Appellants point out that while this language limits the power of local governments to provide transportation services, it does not by its terms impose any restrictions on the taxation powers conferred by the provision. Accordingly, appellants argue that it was impermissible for the legislature to impose restrictions on a power given without limitation to counties and municipalities.
 
 
 38
 We reject appellants' interpretation of the limiting language found in section 2-6102. Under Georgia law, an act of the General Assembly carries a strong presumption of constitutionality, Bryan v. Georgia Public Service Comm'n, 238 Ga. 572, 573, 234 S.E.2d 784 (1977), and therefore should not be set aside unless it "plainly and palpably" conflicts with a constitutional provision. City of Atlanta v. Associated Builders & Contractors, Inc., 240 Ga. 655, 657, 242 S.E.2d 139 (1978). There is no clear conflict between the Georgia constitution and the MARTA Act amendment challenged in this case. Contrary to appellants' contention, it is unlikely that the Georgia legislature intended the limiting language of section 2-6102 to apply to the fifteen enumerated powers and not to the taxation power granted in support of those powers. While the language of the constitution permits such an interpretation, it does not require it. Furthermore, such a result seems inconsistent with the purpose of the limiting language, which was to reserve to the legislature extensive authority to regulate the exercise of the enumerated powers by the local governments. In our view, therefore, a statute limiting the use of tax revenue is merely one means of regulating the power of local governments to provide transportation services. This interpretation is consistent with the language of section 2-6102 and avoids a conflict between the constitution and the statute.
 
 
 39
 E. Urban Mass Transportation Act.
 
 
 40
 Finally, appellants argue that in implementing a fare increase MARTA did not and, because of the state-imposed budgetary and expenditure restraints, could not comply with the requirements of the Urban Mass Transportation Act, 49 U.S.C. § 1601 et seq. We find that the district court did not abuse its discretion in concluding that these claims lack substantial merit.
 
 
 41
 The Urban Mass Transportation Act was enacted to assist state and local governments in developing and financing improved mass transportation systems. 49 U.S.C. § 1601. MARTA receives federal funds under this act and, therefore, must comply with the terms and conditions set forth in the legislation. Under section 5 of the Act, MARTA is required to hold public hearings prior to any change in transit fare or substantial change in transit service. The purpose of these hearings is to enable MARTA to give consideration "to the effect on energy conservation, and the economic, environmental, and social impact" of such changes.
 
 
 42
 Appellants contend that no consideration was given to these factors prior to the imposition of the fare increase. The evidence in the record lends no support to this contention. On June 12, 1980, MARTA conducted several public hearings on the question of the proposed fare increase. From the testimony it heard, the district court determined that MARTA considered the public comments voiced at these hearings and weighed the economic, environmental, and social impact of a fare increase and its effect on energy conservation. We find no abuse of discretion with respect to this finding. Furthermore, the record reveals that MARTA did submit assurances to the Urban Mass Transportation Administration that it had complied with the terms of 49 U.S.C. § 1604(i)(3).
 
 
 43
 Appellants next argue that because of the budgetary and expenditure restraints (discussed above) imposed by state law, MARTA had no choice but to increase fares. Therefore, argue appellants, the comments made at the public hearings received merely perfunctory consideration and were actually irrelevant to MARTA's deliberations on the proposed fare increase.
 
 
 44
 We conclude that the district court did not err in finding no unavoidable conflict between the MARTA Act provisions and federal law. We recognize, of course, that these budgetary limitations, in conjunction with other factors such as total receipts and costs, may call for a fare increase. Nevertheless, MARTA retains the discretion to avoid any increase by reducing services or other expenses. Thus, although MARTA is subject to state budgetary limitations, these state laws do not preclude the Authority from considering the environmental, economic, and social effects of a fare increase.
 
 III.
 
 45
 On June 30, 1980, one day prior to the proposed fare increase, appellants filed their complaint seeking a temporary restraining order and a preliminary injunction enjoining the implementation of the increase. The district court immediately granted a TRO and scheduled a hearing for July 3, 1980 on appellants' motion for a preliminary injunction. At the conclusion of the July 3 hearing the court continued the TRO until July 11, 1980 to permit the filing of supplemental briefs and to provide the court with additional time to consider all issues raised.
 
 
 46
 At this time MARTA, relying on Fed.R.Civ.P. 65(c), made a motion for posting of security by appellants. The district court denied the motion with the proviso that if a preliminary injunction were granted, security would be required. On July 11 the court denied the request for a preliminary injunction and dissolved the TRO. In its cross-appeal, MARTA contends that the district court erred in granting a TRO without requiring appellants to post security for the payment of its costs and damages should it ultimately be determined that the increase was proper.
 
 
 47
 Federal Civil Procedure Rule 65(c) states that no restraining order "shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully ... restrained" (emphasis added). Under this court's interpretation of Rule 65(c), the amount of security required by the rule is a matter within the discretion of the trial court. Thus, the court "may elect to require no security at all." Corrigan Dispatch Co. v. Casaguzman, F. A., 569 F.2d 300, 303 (5th Cir. 1978). See Scherr v. Volpe, 466 F.2d 1027, 1035 (7th Cir. 1972); Urbain v. Knapp Bros. Manufacturing Co., 217 F.2d 810 (6th Cir. 1954), cert. denied 349 U.S. 930, 75 S.Ct. 772, 99 L.Ed. 1260 (1955).
 
 
 48
 While we recognize that a district court may abuse its discretion in refusing to require security in a particular case, we find no abuse here. The action seeking to enjoin the fare increase was filed on behalf of local government entities, a union for domestic workers, a welfare rights organization, and a pauper representing herself and others similarly situated. These parties were seeking to protect citizens in the Atlanta area from perceived adverse economic and social consequences. In a real sense, therefore, plaintiffs were engaged in public-interest litigation, an area in which the courts have recognized an exception to the Rule 65 security requirement. Furthermore, the court could reasonably have concluded that the parties to this action were financially unable to post the 1.3 million dollars per month which MARTA alleged it would suffer during the restraining period. Finally, when the court denied the request for security it made clear that the TRO would be in effect for only eight more days. The short duration of the restraining order minimized the risk of serious harm to MARTA.
 
 IV.
 
 49
 We affirm the district court's determination that appellants have failed to establish that they would ultimately prevail on the merits of their action. Accordingly, appellants are not entitled to the extraordinary relief of preliminary injunction. We further find that the district court did not abuse its discretion in refusing to require appellants to post security during the period that MARTA was temporarily restrained.
 
 
 50
 AFFIRMED.
 
 
 
 [1]
 On June 23, 1980, the MARTA Board of Directors voted eight to four to increase the transit fare for bus and rail services from twenty-five cents to fifty cents effective July 1, 1980 and to sixty cents effective January 1, 1981
 
 
 [2]
 Ga.Const. art. XVII, § 1, paras. I-V, 1964 Ga.Laws, p. 1008 et seq
 
 
 [3]
 The state representatives are the Commissioner of the Department of Transportation, the State Revenue Commissioner, and the Executive Director of the State Properties Commission
 
 
 [4]
 In addition, MARTA has contracted with the City of Atlanta, Fulton County, and DeKalb County
 to the extent practicable, (to) prescribe, revise and collect such rates, fees and charges for transportation so that, together with any other income and available funds, it will be able to fulfill its budgeted obligations.
 Rapid Transit Contract and Assistance Agreement, para. 1(d).
 
 
 [5]
 Engineering Report § 6.2.1. The Engineering Report, prepared in September 1971, consists of preliminary plans and recommendations for the acquisition and construction of the MARTA system. This report was incorporated in the Rapid Transit Contract and Assistance Agreement
 
 
 [6]
 MARTA is given the task of operating and administering a transit system for the Atlanta metropolitan area. The Authority "is no more legislative in character than the County School Board in Sailors, which had the power to levy taxes." Burton v. Whittier Vocational Regional School Dist., 449 F.Supp. 37, 39 (D.Mass.1978)
 
 
 [7]
 Furthermore, the Engineering Report, in addition to its low-fare policy, also recognizes that MARTA has a duty to be financially responsible:
 The Board is committed to a policy of maintaining fares to be charged on the System approved today at the lowest possible rate considering all relevant matters. The Board cannot adopt a fare without reference to all of the financial commitments and resources involved in the acquisition, construction and operation of the system.
 Emphasis added.
 
 
 [8]
 See Sentell, Local Government "Home Rule": A place to Stop, 12 Ga.L.Rev. 805 (1978); Howard, Home Rule in Georgia: An Analysis of State and Local Power, 9 Ga.L.Rev. 757 (1975)