S91A0092. WATSON et al. v. ELLIS.
(406 SE2d 473)

PER CURIAM.
Judgment affirmed without opinion pursuant to Rule 59.
*All the Justices concur, except Clarke, C. J., Smith, P. J., and Benham, J., who dissent.*

SMITH, Presiding Justice, dissenting.
I strenuously object to the majority's affirmance of the trial court's decision for the appellee.
The appellants, Wayman and Denise Watson sued their landlord appellee, Ronald L. Ellis, after a glass shower door fell and shattered,

injuring Mr. Watson. The shower door did not contain safety glass, and Mr. Watson received severe cuts on his arms and wrists. The trial court held that a city ordinance requiring safety glass in all hazardous locations (including shower doors) was preempted by a state law requiring safety glass only in the sale, fabrication, assembly, or installation of glass in hazardous locations, and the court excluded any theory of the case involving a violation of the city ordinance or state law. Consequently, the court refused to instruct the jury on negligence per se. Instead, it gave an erroneous instruction on assumption of risk, and the jury returned a verdict for Mr. Ellis. I believe this case should be reversed and remanded for a new trial.

The bathroom where Mr. Watson was injured contained a bathtub with sliding glass doors which hung from a metal rail. These doors contained regular pane glass, rather than "tempered" or "safety" glass.[1] The shower doors did not extend down into the bottom rail; instead, they hung just above the bottom rail and tended to swing slightly. As a result, the doors would sometimes come off the metal rail, and the Watsons would have to rehang them. At trial, Mr. Watson testified that on several occasions he informed Mr. Ellis that the shower doors often came off the rail.

On the morning of June 25, 1986, Mr. Watson entered the tub to take a shower when the shower doors fell on him. Mr. Watson put his arms up to shield himself, and the glass doors shattered on impact, severely cutting his arms and wrists, which required emergency medical treatment, and later plastic surgery.

The appellants sought to introduce as evidence portions of the Savannah Building Code,[2] which was in effect at the time of the acci-

---

[1] Mr. Mires Rosenthal, former Director of Inspections for the City of Savannah, testified that safety glass is designed to break into small granules rather than jagged edges upon impact so that it will not cut people.

Mrs. Janice Brewer, owner of a glass company, also testified that safety glass does not cut people upon impact.

[2] The Savannah Building Code provides in pertinent part:

101.2 — CODE REMEDIAL

This code is hereby declared to be remedial and shall be construed to secure the beneficial interests and purposes thereof — which are public safety, health, and general welfare — through . . . safety to life and property from fire and other hazards incident to the construction, repair, removal, demolition, use and occupancy of buildings, structures, or premises.

101.3 — SCOPE

(a) The provisions of this code shall apply to the construction, alteration, repair, equipment, use and occupancy, location, maintenance, removal and demolition, of every building or structure or any appurtenances connected or attached to such buildings or structures . . .

101.4 — EXISTING BUILDINGS

(a) If, within any twelve (12) month period, alterations or repairs costing in excess of fifty (50) percent of the then physical value of the building are made to an existing building, such building shall be made to conform to the requirements of this

dent. The majority interprets the building code to require property owners to remedy defects only where the renovations to the house meet the requirements of § 101.4. However, § 101.2, referring to cases involving hazardous situations, expressly states that the building code is remedial. Mr. Rosenthal, the former director of inspections, testified that the City of Savannah treated the building code as requiring building owners to remedy any defect which constitutes a "hazardous situation." He testified that the requirements of § 101.4 apply only to situations which are "not hazardous." Since a court and not an expert must determine the legal impact of a statute or ordinance, the majority holds Mr. Rosenthal's statements irrelevant. But, a plain reading of the Savannah ordinance reveals that Mr. Rosenthal's testimony is the most plausible interpretation of the provision. Under the majority's interpretation, the language in § 101.2, declaring the code to be remedial, would be meaningless. The better interpretation of the code is that the code is remedial for hazardous situations, while the standards of § 101.4 apply to non-hazardous situations. In any event, the issue of whether the building code requires property owners to remedy existing hazardous situations is a genuine issue which the parties should have been allowed to argue at trial.[3] The trial court, however, cut short the inspector's testimony on this subject because it held that the city building code was preempted by the Georgia law dealing with safety glass in hazardous locations.[4]

---

code for new buildings . . . .

    (c) If the cost of such alterations or repairs within any twelve (12) month period . . . is more than twenty-five (25) but not more than fifty (50) percent of the then physical value of the building the portions to be altered or repaired shall be made to conform to the requirements of this code for new buildings . . .

101.6 — MAINTENANCE

All buildings or structures, both existing and new, and all parts thereof, shall be maintained in a safe and sanitary condition . . .

CHAPTER XXVII — GLASS

SECTION 2703 — MAXIMUM AREAS — MAXIMUM THICKNESS

2703.1 — IMPACT LOADS

    (a) Glazing in hazardous locations such as glass doors . . . fixed glass panels . . . sliding glass door units . . . shower doors . . . tub enclosures and storm doors shall be safety glazing materials. . . .

[3] Even if the majority's interpretation of the building code is accepted, a genuine issue remains as to whether the renovations made by Mr. Ellis met the requirements of § 101.4. The majority assumes that Mr. Ellis' renovations did not meet these requirements. However, the trial record indicates that substantial renovations were made to the exterior and interior of the house, including the bathroom and, allegedly, the shower door itself. Following the trial court's ruling that the city building code was preempted by the state statute, the appellant no longer had reason to present evidence that the renovations met the standards of § 101.4. Thus, even if the majority's interpretation of the code is accepted, the appellants should be given the opportunity to show that the renovations to the house brought the case within the provisions of the building code.

[4] OCGA § 8-2-90 provides in pertinent part:

(2)(A) "Hazardous locations" means for the purpose of glazing:

Unlike the city ordinance, the state law is not remedial; it does not apply to glass shower doors already in place. Rather, the state law is prospective; it prohibits the sale, fabrication, assembly, or installation of glass other than safety glass in hazardous locations.

At trial, a conflict arose as to whether the city ordinance was valid, in light of the less stringent state law. After considering arguments of counsel for both sides, the trial court ruled that the state law preempted the local ordinance. The court placed primary emphasis on *Thompson v. Hill*, 143 Ga. App. 272 (238 SE2d 271) (1977), and erroneously construed it to mandate that a state law preempts a local ordinance where the local ordinance is more strict. Because the Savannah Building Code applied a more stringent standard than the state law, the court held that the state law governed. The court thus excluded from the jury's consideration any theory involving a violation of the city ordinance. In its charge to the jury, the court instructed, "There's no question before you today of any potential violation of the building code. What this case resolves down to [sic] is a case of negligence." The court refused to give the appellant's proposed jury charge on negligence per se.

I believe the court committed error at law in excluding from the jury's consideration the alleged violation of the city building code and refusing to instruct the jury on negligence per se. In holding that the state law preempted the city ordinance, the trial court misconstrued established law on this issue. Article III, Section VI, Paragraph IV of the Georgia Constitution of 1983 provides that "no local or special law shall be enacted in any case for which provision has been made by an existing law." In *Thompson*, the Georgia Court of Appeals interpreted this provision as it applied to a City of Atlanta traffic law. The Atlanta ordinance set forth a stricter standard for making left-hand turns at intersections than the state law. The Court of Appeals held that the state law governed because "the city ordinance is contrary to *and* more strict in its provisions than the state law." (Emphasis supplied.) *Thompson*, supra at 273. Because the city ordinance "would nullify" the relevant portion of the state law, the court struck down the ordinance. Id.

Here, in applying *Thompson*, the trial court focused solely on the fact that the city building code is more strict than the state law. *Thompson*, however, requires not only that the local law be more

---

(v) Glazing in shower and bathtub doors and enclosures . . .
OCGA § 8-2-91 provides:
It shall be unlawful, for use in the State of Georgia, knowingly to sell, fabricate, assemble, glaze, install, or consent to be installed any glazed structure, product, or material to be used in any hazardous location if said product, material, or structure contains any glass or glazing product other than safety glazing material.

strict than the state law, but in order to violate the constitution, the local law must be *in conflict* with the state law. Though the Savannah Building Code is more strict than the state law, the two laws do not conflict. The code enhances rather than "nullifies" the state law.

This Court dealt with the issue of competing state and local laws in *City of Atlanta v. Associated Builders &c. of Ga.*, 240 Ga. 655 (242 SE2d 139) (1978). In that case, the City of Atlanta had enacted an ordinance requiring certain construction workers to be paid a minimum wage greater than that established by the State of Georgia. Reversing judgments by the Fulton County Superior Court and the Court of Appeals, this Court held that the city ordinance was not unconstitutional. We held that the essential question is whether there is a "genuine conflict" between the local and state law. Id. at 657. We focused on the fact that "the local . . . law does not detract from or hinder the operation of the state law, but rather it augments and strengthens it." Id.

Here, the Savannah ordinance does not conflict with the state law. Like the local law in *City of Atlanta*, supra, the Savannah Building Code augments and strengthens the state law for the express purpose of securing safety from hazards. Savannah Building Code § 101.2.

The trial court also committed error at law in its instruction to the jury on assumption of risk. Despite the appellant's objection at the charge conference, the court instructed the jury as follows:

> I charge you that if you find that the Plaintiff had *equal knowledge* with the Defendant in this case, or the opportunity for equal knowledge regarding any alleged condition or hazard, and if you find that the Plaintiff acted with such knowledge, then I charge you that the Plaintiff *assumed the risk* and dangers incident to the known condition and *cannot recover* from the Defendant. (Emphases supplied.)

The appellant formally renewed his objection to this charge following its delivery to the jury.[5]

The court's instruction erroneously asserts that if Mr. Watson's knowledge of the defect was equal to that of Mr. Ellis, then he as-

---

[5] Georgia's suggested pattern jury instruction on assumption of risk reads as follows: When a person knowingly and voluntarily takes a risk of physical injury, the danger of which is so obvious that the act of taking such a risk, in and of itself, amounts to a failure to exercise ordinary care and diligence for his own safety, he cannot hold another liable for injuries proximately caused by such action even though the injuries may be in part attributable to the negligence of such other person. Council of Superior Court Judges of Georgia, Suggested Pattern Jury Instructions, Vol. I, 2d ed., Civil Cases, p. 292 (1984).

sumed the risk and is completely barred from recovery. Under this instruction, a jury could find that a tenant who had *no* knowledge of a defect had assumed the risk if the landlord also had no knowledge of the defect. Such a finding would be clearly erroneous. In order to assume a risk, a plaintiff must have "a full appreciation of the risk involved." See *Beck v. Wade*, 100 Ga. App. 79 (110 SE2d 43) (1959).

Substantial evidence was adduced at trial that both the appellant and the appellee were aware of the shower doors' tendency to fall off the railing, but that neither was aware that the doors did not contain safety glass. Assuming that the jury believed this evidence, under the court's instructions, it would have found that the Watsons assumed the risk and were completely barred from recovery. However, a finding that the Watsons and Mr. Ellis had equal knowledge of the tendency to fall should not end the jury's analysis. Under such a factual situation, the jury must decide if the landlord, upon being informed of the tendency to fall, acted within a reasonable time to remedy the defect. *Veal v. Hanlon*, 123 Ga. 642 (51 SE 579) (1905). A tenant who has equal knowledge of a defect may still recover from the landlord. Id. The court's instructions in the present case, however, precluded such a result.

Because I believe the majority has misinterpreted the Savannah ordinance, and because the trial court misconstrued *Thompson* and improperly instructed the jury on assumption of risk, I believe that the appellants are due a new trial.

I am authorized to state that Justice Benham joins in this dissent.

DECIDED JULY 3, 1991 —
RECONSIDERATION DENIED JULY 24, 1991.

*Thomas R. Taggart,* for appellants.
*Forbes & Bowman, Morton G. Forbes, Catherine M. Bowman, John A. Foster, Birney O. Bull,* for appellee.