S98A1583. FRANKLIN COUNTY et al. v. FIELDALE FARMS CORPORATION.
(507 SE2d 460)

FLETCHER, Presiding Justice.

The issue in this appeal is whether OCGA § 12-5-30.3, the state statute regulating the application of sludge to land, preempts a county land disposal ordinance. We conclude that the General Assembly has failed to give local governments authority to regulate the application of sludge to land, except in the specific area of monitoring. Because Franklin County has sought to establish a duplicate permit system that is not authorized by general law, we hold that OCGA § 12-5-30.3 preempts the county's Land Disposal Ordinance by implication. Therefore, we affirm.

---

## FACTUAL AND PROCEDURAL HISTORY

Fieldale Farms Corporation filed a permit application with the state Environmental Protection Division in July 1994 to apply biosolids or sludge on private farm land. Sludge is "any solid, semi-solid, or liquid waste generated by a municipal wastewater treatment plant."[1] Fieldale proposed removing the sludge from the wastewater treatment lagoons at its chicken rendering plant in Stephens County and applying it to 62 acres of agricultural land in Franklin County. After conducting a public hearing and receiving a supplemental application, EPD issued a state permit to Fieldale in May 1995 for the one-time application of the sludge. Franklin County property owners and residents challenged EPD's decision in an administrative proceeding, and an administrative law judge affirmed the issuance of the permit in October 1995.

While Fieldale's application with EPD was pending, the Board of Commissioners of Franklin County in February 1995 adopted a Land Disposal Ordinance to regulate the disposal of industrial, hazardous, and biomedical waste. Fieldale applied for a county permit two months later and paid the requested $5,000 application fee. The county commission held a public hearing in October and denied the permit request in November 1995 based on Fieldale's statewide environmental compliance record and the depreciating effects of the proposed disposal.

Fieldale sued the county and its commissioners, seeking a declaratory judgment, injunction, and mandamus. Both Fieldale and the county filed motions for summary judgment. The trial court granted Fieldale summary judgment on several grounds, including that state law preempted the county from enacting any ordinance dealing with water quality control.

## STATE PREEMPTION OF LOCAL LAWS

1. The doctrine of state preemption is based on the concept that statutes of the state legislature control over county ordinances.[2] Generally preemption is based on legislative intent.[3] Under federal law, for example, Congress may express an intent to preempt state law by expressly defining the area of preemption, extensively regulating an

---

[1] 33 U.S.C.A. 1412a (d) (1) (West 1986); see also OCGA § 12-5-30.3 (1996) (defining sludge as "the solid or semisolid residue generated at a waste-water treatment or pretreatment plant").

[2] See Charles S. Rhyne, *The Law of Local Government Operations* 454-455 (1980).

[3] Id. at 455; see also *Macon-Bibb County Hosp. Auth. v. National Treasury Employees Union*, 265 Ga. 557, 558 (458 SE2d 95) (1995) (issue of federal preemption of state law is a question of congressional intent).

area so that preemption may be inferred, or enacting a law that directly conflicts with state law.[4] Similarly, state law may preempt local law expressly, by implication, or by conflict.[5]

The Georgia Constitution historically addressed the concept of preemption in the uniformity clause. In both the 1945 and 1976 Constitutions, the uniformity clause stated: "Laws of a general nature shall have uniform operation through the State, and no special law shall be enacted in any case for which provision has been made by existing general law."[6] This Court interpreted that provision in two ways, as a preemption rule and as a conflict rule.[7] Under the preemption analysis, the provision meant that "once the legislature entered a field by enacting a general law, that field must thereafter be reserved exclusively to general legislation and could not be open to special or local laws."[8] Under the conflict analysis, this Court construed the same provision as prohibiting special laws only when there was a genuine conflict with a general law.[9] Based on these differing interpretations, it was unclear whether the uniformity clause preempted any special or local law when the state had passed a general law on the subject or whether it merely prohibited conflicts between general and local laws.[10]

To resolve the confusion in our case law, the drafters of the 1983 Constitution revised the uniformity clause.[11] Although one committee considered adopting the conflicts rule and granting concurrent jurisdiction to local governing authorities on any matter,[12] it ultimately rejected that approach.[13] Instead, the committee recommended adopting an exception to the general rule of preemption to permit local governments to have concurrent jurisdiction with the

---

[4] See *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U. S. 141, 153 (102 SC 3014, 73 LE2d 664) (1982).

[5] See, e.g., *Talbot County v. Skipper*, 620 A2d 880, 883 (Md. 1993).

[6] See Ga. Const. of 1945, § 2-401; Ga. Const. of 1976, art. I, sec. II, para. VII.

[7] See *City of Atlanta v. Associated Builders & Contractors*, 240 Ga. 655, 656 (242 SE2d 139) (1978) (prior cases in this area are irreconcilable); U86-22, 1986 Op. Att'y Gen. 184, 185 ("Prior cases construing preemption language similar to that found in the 1983 Constitution are kaleidoscopic and hard to reconcile.").

[8] *City of Atlanta v. Hudgins*, 193 Ga. 618, 623 (19 SE2d 508) (1942).

[9] See *Powell v. Board of Comm'rs*, 234 Ga. 183, 185 (214 SE2d 905) (1975).

[10] See *City of Atlanta v. Associated Builders*, 240 Ga. at 656.

[11] See State of Georgia, Select Comm. on Constitutional Revision, 1977-1981, II Comm. to Revise Article IX, *Transcript of Meetings*, Aug. 20, 1980 at 63-64 (discussing two lines of cases interpreting the uniformity clause); Sept. 2, 1980 at 8-9 (same); Oct. 30, 1980 at 25-26 (same).

[12] See id., Sept. 2, 1980 at 4-6 & 11-30 (discussing proposed draft that would prohibit local laws that conflicted with general law and would permit the legislature by general law to authorize counties and cities to enact local laws in the same field).

[13] See id., Oct. 30, 1980 at 28 & 30 (discussing reasons for rejecting draft that favored conflict rule).

state to exercise certain police powers in areas of concern to both.[14] The Legislative Oversight Committee adopted the exception, and voters ratified it.[15]

2. The uniformity clause in the 1983 Georgia Constitution now provides:

> Laws of a general nature shall have uniform operation throughout this state and no local or special law shall be enacted in any case for which provision has been made by an existing general law, except that the General Assembly may by general law authorize local governments by local ordinance or resolution to exercise police powers which do not conflict with general laws.[16]

The clause's first provision follows the preemption rule of previous constitutions by precluding local or special laws when general laws exist on the same subject. Under this provision, preemption may be express or implied.[17] The clause's second provision provides for an exception to the general rule of preemption when general law authorizes the local government to act and the local ordinance does not conflict with general law. We have concluded that there was no conflict when the local law did not impair the general law's operation but rather augmented and strengthened it.[18]

## ENVIRONMENTAL LAWS ON APPLYING SLUDGE TO LAND

3. The Georgia Water Quality Control Act gives state government the responsibility for establishing and maintaining water qual-

---

[14] See id., Oct. 30, 1980 at 25-31 & 37 (proposing draft, which was adopted, that would give General Assembly authority to grant local governments power to act concurrently in areas of police power); I Legislative Oversight Comm., *Transcript of Meetings*, July 1, 1981 at 65-66 (noting proposal of article IX committee to revise uniformity clause); II Legislative Oversight Comm., *Transcript of Meetings*, July 14, 1981 at 115-117 (explaining proposal).

[15] II Legislative Oversight Comm., *Transcript of Meetings*, July 14, 1981 at 117 (approving proposal).

[16] Ga. Const. of 1983, art. III, sec. VI, para. IV (a); see also id., art. IX, sec. II, para. I (c) (home rule provision preempts county governing authorities from taking action affecting eight matters specifically enumerated and "other matters which the General Assembly by general law has preempted").

[17] See *Cotton States Mut. Ins. Co. v. DeKalb County*, 251 Ga. 309, 312 (304 SE2d 386) (1983) (finding implied preemption when state statute extensively and exhaustively regulated all aspects of the insurance industry at the state level).

[18] See *Grovenstein v. Effingham County*, 262 Ga. 45, 47 (414 SE2d 207) (1992) (holding that local ordinance prohibiting the sale of beer or wine to persons less than 21 years of age was not preempted by state statute prohibiting the furnishing of any alcoholic beverages to persons under 21); see also *City of Atlanta v. McKinney*, 265 Ga. 161, 164 (454 SE2d 517) (1995) (cities may not enact ordinances defining family relationships when General Assembly has provided for the establishment of family relationships by general law).

ity.[19] The act was passed to restore and maintain water purity and supplies within the state and require reasonable treatment of sewage, industrial wastes, and other wastes prior to their discharge into the waters of the state.[20]

In 1993, the General Assembly amended the act to regulate the application of sludge to land. OCGA § 12-5-30.3 defines the term "sludge land application" as the placement of sludge on ground other than a landfill for the purpose of disposing of it, conditioning soil, or enhancing agriculture. The statute requires any person operating a sludge land application system to obtain the EPD director's approval and requires the Board of Natural Resources to adopt technical and procedural regulations, including public notice and hearing requirements. In the area of local regulation, the statute provides that local governing authorities may assess reasonable monitoring fees from both the generator of the sludge and the owner of the site on which the sludge is to be applied.

Franklin County's Land Disposal Ordinance requires any person to obtain a permit to dispose of industrial, hazardous, radioactive, or biomedical waste on land in the unincorporated parts of the county. The application must be prepared by a licensed professional engineer and contain detailed descriptions of the existing land site, proposed disposal processes, environmental effects of all wastes to be disposed, and schedule for disposal. The ordinance provides for an application fee, the hiring of expert consultants, an annual monitoring fee, and the right of inspection.

By this ordinance, the county has enacted a local ordinance dealing with the same subject as general law. As a result, the general preemption rule controls unless the county ordinance falls within the exception to the uniformity clause. Under that exception, the General Assembly must have authorized local governments to enact regulations and the local ordinance must not conflict with the state's general laws.

## IMPLIED PREEMPTION OF THE COUNTY ORDINANCE

4. A review of the relevant state laws demonstrates that general law does not give local governments broad authority to regulate the application of sludge to land. Preemption may be inferred generally from the comprehensive nature of OCGA § 12-5-30.3 and its implementing regulations.[21] In its policy statement, the Georgia Water

---

[19] See OCGA § 12-5-20 to § 12-5-53 (1996).

[20] See OCGA § 12-5-21.

[21] See *Cotton States*, 251 Ga. at 312 (implying preemption of county tax on casualty insurance companies from "sweeping language and broad scope" of state statute and regula-

Quality Control Act grants the state the responsibility for both water quality and water supplies without mentioning the role of local governments, unlike the statutes in some states.[22] OCGA § 12-5-30.3 specifically directs the Board of Natural Resources to adopt technical and procedural regulations and requires the state EPD director to approve permits to apply sludge to land. As part of its responsibilities, the board has adopted extensive regulations dealing with land disposal and permit requirements under the Georgia Water Quality Control Act.[23]

In addition, the General Assembly expressly granted local governments limited authority to act in the field of applying sludge to land. Subsection (d) of OCGA § 12-5-30.3 provides authority for local governing authorities to assess reasonable monitoring fees and to seek an injunction if the fees are not paid. By explicitly granting this narrow power to local governments, the statute by implication precludes counties from exercising broader powers.[24] Moreover, by assigning the task of developing permit requirements directly to the state, the statute implies that the General Assembly did not intend to give counties concurrent jurisdiction to regulate through a permit system.

The legislative history of § 12-5-30.3 also supports implied preemption.[25] As originally introduced in the General Assembly, House Bill 228 gave counties authority to approve the land application site.[26] Specifically, subsection (f) would have prevented the state from approving any permit unless the county receiving the sludge gave its written approval or failed to object in writing within 90 days.[27] This "veto power" provision was deleted in the house committee,[28] and an attempt to reinstate the provision on the Senate floor failed by three votes.[29] As enacted into law, the bill limited the regulatory authority of counties to assessing fees and monitoring sites after the director

---

tions and particularly from statewide gross premium tax on casualty insurance companies).

[22] See generally Daniel P. Selmi & Kenneth A. Manaster, *State Environmental Law* § 5.06 (1997) (discussing state environmental law cases where no state preemption of local powers was found based on policy statements in state statute that mandate cooperation with local governments).

[23] See Ga. Comp. R. & Regs. r. 391-3-6-.11 (1996) (water quality control regulations).

[24] See *Krieger v. Walton County Bd. of Comm'rs*, 269 Ga. 678, 682 (506 SE2d 366) (1998); see also *Talbot County v. Skipper*, 620 A2d at 885 ("when the General Assembly intended to authorize local government involvement in sewage sludge utilization, it expressly provided for such involvement").

[25] See Michael Paul Stevens, Peach Sheet, *Conservation and Natural Resources*, 10 Ga. St. U. L. Rev. 65 (1993) (discussing enactment of sludge land application statute).

[26] See 1 Ga. H. J., Reg. Sess., 122 (1993).

[27] Stevens, supra note 25 at 70.

[28] Id. at 70-71.

[29] See 1 Ga. S. J., Reg. Sess., 1005-1006 (1993).

had approved the permit.[30]

Based on the language and legislative history of the state statute, we conclude that the General Assembly has failed to authorize local governments to regulate the application of sludge to land, except in the specific area of monitoring. Because Franklin County has sought to establish a duplicate permit system that is not authorized by general law, we hold that OCGA § 12-5-30.3 preempts the county's ordinance by implication.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 23, 1998.

*Barnhart, O'Quinn & Williams, Michael A. O'Quinn, Donald A. Cronin, Jr., Green & Ashworth, Douglas G. Ashworth,* for appellants. *Alston & Bird, Peter M. Degnan, Kendall T. Jones,* for appellee.