## A01A1557. JOHNS v. MARLOW.
(555 SE2d 756)

MILLER, Judge.

William Scott Johns sued David Marlow for injuries he sustained when Johns's motorcycle collided with Marlow's horse on a public road. The trial court granted Marlow's motion for summary judgment, and Johns appeals. As genuine issues of fact remain, we reverse.

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.[1] When this Court reviews an appeal from a grant of summary judgment, a de novo review of the law is conducted and the evidence and all reasonable conclusions and inferences drawn from the evidence are viewed in the light most favorable to the non-movant.[2]

So construed, the evidence reveals that six to eight weeks prior to the accident, Marlow purchased a horse he named Bones and placed him in the same pasture with two other horses. These two horses were not receptive to Bones, and soon all three horses began running and kicking in an attempt to establish dominance. To prevent the horses from injuring one another, Marlow separated Bones from the other two horses and placed him in an adjacent pasture separated by a cross-fence that was secured by a gate with a latch.

On the morning of October 23, 1997, Bones strayed onto a road where he collided with Johns's motorcycle. Marlow subsequently discovered that the gate to the cross-fence between the pastures was open and that some force had pushed the boards on the outer fence

---

[1] OCGA § 9-11-56 (c); see *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[2] *Matjoulis*, supra, 226 Ga. App. at 459 (1).

adjacent to the road so that they had become separated from the posts, leaving a gap for a horse to escape.

In two related enumerations, Johns challenges the grant of summary judgment to Marlow, arguing that the court erred in finding that Marlow exercised ordinary care in maintaining his horses, which the court held rebutted the permissible inference of negligence associated with Bones straying onto the road.

OCGA § 4-3-3 provides that "[n]o owner shall permit livestock to run at large on or to stray upon the public roads of this state. . . ." And where an individual is injured by livestock,

> [t]he mere fact that livestock is running at large permits an inference that the owner is negligent in permitting the livestock to stray; but when the owner introduces evidence that he has exercised ordinary care in the maintenance of the stock, that permissible inference disappears. For the evidence to require a verdict for the defendant it must demand a finding that he was not negligent in any respect. *A jury question reappears in the case where, although evidence of facts showing ordinary care on his part have been introduced, other facts would support a contrary inference.*[3]

Marlow surmised that the other two horses opened the gate to the cross-fence by manipulating the latch with their teeth and weight and that, once inside the pasture that Bones occupied, they ran at and shoved Bones, pushing him through the outer fence adjacent to the road. It is true that "[g]uesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment."[4] But here, Marlow's surmising is based upon facts of which he had firsthand knowledge.[5]

Ordinary care is that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances.[6] Although Marlow deposed that he exercised ordinary care in the maintenance of the horses (i.e., regular feeding and watering and well-constructed and -maintained fences), there was evidence to the

---

[3] (Citations and punctuation omitted; emphasis supplied.) *Carver v. Kinnett*, 209 Ga. App. 577, 579 (1) (434 SE2d 136) (1993), quoting *Wilkins v. Beverly*, 124 Ga. App. 842 (186 SE2d 436) (1971).

[4] (Citations and punctuation omitted.) *John Hewell Trucking Co. v. Brock*, 239 Ga. App. 862, 864 (522 SE2d 270) (1999).

[5] *Carver*, supra, 209 Ga. App. at 579 (1) (a witness may give his opinion if he testifies to the facts on which that opinion is based, and the trier of fact is not necessarily bound by such opinion testimony but may arrive at a different conclusion based upon the evidence).

[6] OCGA § 51-1-2.

contrary. Marlow's own testimony establishes that he was aware that the horses were running and kicking at each other to establish dominance. And he acknowledged that the two horses had opened the cross-fence gate during the night previous to the accident and entered the pasture where Bones was located and that the horses broke the electric wire attached to the outer fence where Bones escaped. Marlow also deposed that he was aware that some horses are capable of opening gates but nevertheless failed to secure the fence between the pastures with a lock. Moreover, the fact that Bones pushed through the fence adjacent to the road merely dislodging the boards from the posts without breaking the fence is contrary to Marlow's assertion that he exercised ordinary care in the maintenance of his fence.

Under these circumstances, a jury should decide whether ordinary care required Marlow to do more than merely separate the horses by a cross-fence secured only by a latch that was not locked and that horses could open.[7] A jury could infer that such lack of maintenance allowed the two aggressive horses to enter the adjacent pasture and challenge Bones, resulting in him being pushed through the outer fence and running astray.

Notwithstanding Marlow's presentation of evidence to show that he exercised ordinary care, there were other facts present to support a contrary inference, thereby creating a jury question. Thus, the court erred in granting summary judgment in favor of Marlow.

*Judgment reversed. Blackburn, C. J., Johnson, P. J., Ruffin, Eldridge, Barnes and Ellington, JJ., concur. Andrews, P. J., dissents.*

ANDREWS, Presiding Judge, dissenting.

Because I agree with the trial court's conclusion that Marlow was entitled to summary judgment because nothing but guesses and speculation were posited by plaintiff Johns in opposition to Marlow's motion for summary judgment, I respectfully dissent.

To obtain summary judgment, a defendant need not produce any evidence but must only point to an absence of evidence supporting at least one essential element of the plaintiff's claim. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Where the inference of negligence allowed by the fact that Bones was in the road when struck by Johns is refuted by the concrete explanation provided by Marlow of the construction, maintenance, and inspection of his fence, Johns was required to come forward with some evidence of negligence by Marlow, besides Marlow's speculation

---

[7] Marlow deposed that the cross-fence gate was not secured with a lock.

regarding how Bones ended up in the road, in order to defeat Marlow's motion for summary judgment.

As stated in *Porier v. Spivey*, 97 Ga. App. 209, 211-212 (102 SE2d 706) (1958),

> there arises a permissible inference authorized prima facie by the mere fact of the running at large by the animal that the owner of the livestock was negligent in allowing the stock to run at large or stray, but when the owner introduces evidence which would authorize a finding that he had exercised ordinary care in the maintenance of the stock, that permissible inference disappears.

In addition to the facts stated by the majority, the following facts are pertinent to consideration of the motion.

The fences around Marlow's pastures, which he constructed to contain his horses, consisted of four- by four-inch corner posts which had been cemented into the ground. The remaining posts were three by five inches, planted two feet into the ground and packed with rocks and dirt. The railings on the fences were one-inch by four-inch boards, and four were installed between each post with eight penny spiral siding nails. Because the original boards were not pressure treated lumber, Marlow replaced them with pressure treated lumber in 1996, the year before Johns' accident. The outer perimeter of the fences was topped with an electrified wire, which was monitored from an electric indicator panel in the tack room. The electrical wire was working on October 23, 1997. An internal cross-fence with a gate and latch separated Marlow's two pastures.

Marlow purchased Bones, a gentle twelve- to fifteen-year-old saddle horse, approximately six to eight weeks before the accident. Marlow had two other horses which he had owned for six years. Upon first getting Bones, Marlow had enclosed him in the same pasture with the other two horses, which exhibited "normal horse behavior, running, kicking, trying to establish which one is going to be the boss." Because one of the other horses had kicked at Bones and because horses can injure each other while adapting to one another, Marlow separated Bones from the other two, placing him in an adjacent pasture separated from the others by the cross-fence with a gate and metal latch. Marlow had previously owned lots of horses and had never had any that did not eventually get along.

Bones had stayed within his enclosure and the other two within theirs and the cross-fence gate had remained closed "for some time with no problem. . . ." Prior to this incident, none of Marlow's horses had opened the gate between the two pastures or escaped from his enclosures, although Marlow acknowledged that "some" horses could

open gates. Marlow did not know of any instances of horses pushing other horses through fences before October 23. Prior to October 23, 1997, neither of the other horses had gotten over or through the cross-fence and gate into Bones' pasture.

The morning after Johns' crash into Bones,[8] Marlow found the gate connecting the two pastures open, the other two horses in Bones' pasture, and the rails pushed off the corner post. The rails were not damaged, and Marlow nailed them back to the post after the accident. While, based on finding these horses in Bones' pasture with the gate open and the rails pushed off the fence, Marlow expressed his assumption (or "surmised," as the majority states) that the other horses had opened the latch on the cross-fence and entered Bones' pasture, chasing him and causing him to push the railings off the fence, that alone is insufficient to preclude summary judgment in his favor on the record before us.

This case, I believe, is controlled by *John Hewell Trucking Co. v. Brock*, 239 Ga. App. 862 (522 SE2d 270) (1999), which, as acknowledged by the majority, recognizes that an inference based on impermissible speculation will not overcome direct, competent evidence of ordinary care to prevent summary judgment. Impermissible speculation is all that is presented here by Johns.

There is no evidence in the record indicating that, as constructed, Marlow's fence did not comply with local custom, industry practice, or any other standard applicable to fencing horses. Compare *Carver v. Kinnett*, 209 Ga. App. 577, 579 (1) (434 SE2d 136) (1993) (opinion testimony that fence was inadequate, based on height, loose mesh, and mesh not meeting barbed wire, provided facts which created jury issue). As stated in *Carver*, "[t]here was evidence of [the owners'] negligence in maintaining their fences other than the mere fact that the cows strayed in the road." Id. at 579-580 (1). See also *Wilkins v. Beverly*, 124 Ga. App. 842 (186 SE2d 436) (1971) (fence, as built, was not high enough to prevent the livestock from jumping it).

Marlow's own speculation and guess about the chain of events resulting in Bones' presence in the road do not conflict in any way with the concrete evidence regarding the construction of his fence and his use of ordinary care. As he stated, "I feel like I did everything within reason that I could do. You learn every day. Hindsight is 20/20. But at that time[,] I felt that I had my horses confined, secured, had done everything within reason to take care of them."

Summary judgment to Marlow, in my opinion, was appropriate. *John Hewell Trucking Co.*, supra; see *Taylor v. Thompkins*, 242 Ga. App. 789, 791 (531 SE2d 360) (2000).

---

[8] Because of his injuries, Bones was shot by Marlow after the accident.

DECIDED OCTOBER 17, 2001.

*Parker & Lundy, William L. Lundy, Jr., Charles E. Morris, Jr.,* for appellant.

*Tisinger, Tisinger, Vance & Greer, David F. Miceli, Glenn M. Jarrell,* for appellee.