**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 2, 2020**

# In the Court of Appeals of Georgia

A20A1576. FAULKNER et al. v. CRUMBLEY et al.

COOMER, Judge.

Billy M. Faulkner, Merry H. Faulkner, and Billie Jo Faulkner (collectively the "Faulkners") appeal the trial court's order denying their motion for summary judgment. The Faulkners argue they were entitled to a grant of summary judgment because appellees Sonia Crumbley and her minor son M. C. (collectively, the "Crumbleys") failed to present evidence of their negligence. The Faulkners further contend the trial court erred in denying their motion for summary judgment as to the Crumbleys' theory of liability under Section 6-34 of the Jasper County Code of Ordinances because the ordinance is preempted by OCGA § 4-3-1, et seq. Because the evidence failed to establish negligence on the part of the Faulkners and because

we agree that state law preempts the county ordinance at issue in this case, we reverse.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." OCGA § 9-11-56 (c). This Court reviews a ruling on a motion for summary judgment de novo, and views the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmovant. *Morris v. Pope*, 344 Ga. App. 25, 25 (1) (806 SE2d 657) (2017). A defendant may demonstrate that there is no genuine issue of material fact "by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case." *Mitchell v. Austin*, 261 Ga. App. 585, 585 (583 SE2d 249) (2003) (citation omitted). "If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue." *John Hewell Trucking Co. v. Brock*, 239 Ga. App. 862, 862-863 (522 SE2d 270) (1999) (citation omitted). Guesses or speculation which "raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment." *Brown v. Amerson*, 220 Ga. App. 318, 320 (469 SE2d 723) (1996) (citations omitted).

2

So viewed the record shows that on May 8, 2016, Sonia Crumbley was driving her car at night with her minor son, M. C., who was riding in the back passenger seat. The Crumbleys were driving south on State Highway 11 in Jasper County when the vehicle struck a cow owned by the Faulkners standing in the roadway thereby causing the Crumbleys to sustain injuries. The Crumbleys filed suit against the Faulkners, alleging negligence pursuant to OCGA § 4-3-1, et seq., and Section 6-34 of the Jasper County Code of Ordinances (the "ordinance"). The Faulkners moved for summary judgment, arguing that they exercised ordinary care in the maintenance of their fences and livestock and the ordinance is not applicable because it is preempted by state law.

In support of their motion, the Faulkners presented Billie Jo Faulkner's affidavit, in which she stated that she worked on the family farm, and that as part of her duties and responsibilities, she checked the fences every day, including on the day of the accident. Billie Jo averred that the five-foot high board fence with a five-strand barb wire fence along the roadway was, in her opinion, sufficient to confine the cattle. Billie Jo further stated that after learning of the accident, she again inspected the fences and confirmed that they were in good repair, the gates were closed, and she could not find any indication as to how the cow had escaped. She also averred that prior to May 8, 2016, the cow involved in the incident had never escaped the confines

3

of the farm and that there was nothing that could have been done to prevent the cow's escape.

In response to the Faulkners' motion, the Crumbleys asserted that the fence was not sufficient to confine the cattle because, as Sonia stated in her deposition, there were three cows in the roadway at the time of the accident. Following a hearing on the motion, the trial court summarily denied the Faulkners' motion, but certified its order for immediate review. This Court granted the Faulkners' application for interlocutory review, and this appeal followed.

1. The Faulkners argue that the trial court erred in denying their motion because the evidence established that they exercised reasonable care in maintaining their fence and their cows. Specifically, the Faulkners contend the Crumbleys failed to present any admissible evidence to challenge their showing of ordinary care besides mere speculation. We agree.

OCGA § 4-3-3 states that "[n]o owner shall permit livestock to run at large on or to stray upon the public roads of this state or any property not belonging to the owner of the livestock, except by permission of the owner of such property." While the "mere fact that livestock is running at large permits an inference that the owner is negligent in permitting the livestock to stray[, that permissible inference

4

disappears] when the owner introduces evidence that he has exercised ordinary care in the maintenance of the stock." *John Hewell Trucking Co.*, 239 Ga. App. at 863 (citations and punctuation omitted). Nevertheless,

> for the evidence to require a verdict for the defendant it must demand a finding that he was not negligent in any respect. A jury question reappears in the case where, although evidence of facts showing ordinary care on his part have been introduced, other facts would support a contrary inference.

*Id.* at 863. Here, the Faulkners presented evidence by way of affidavit that the fences were sufficient to confine the cattle, that the cow struck by the Crumbleys' vehicle had never escaped the farm prior to the accident, and that following the accident, the fences were in good repair and no gates were open. In response, the Crumbleys presented no credible evidence to the contradict the Faulkners' claims regarding the condition of the fences, prior incidents of escape by cattle, or whether the gates were closed. Rather, the Crumbleys presented testimony evidence that three cows were on the road the night of the accident, which they contend is sufficient, without more, to create a jury question that the Faulkners were negligent in maintaining their fences.

While it is true that the Crumbleys could create a jury question regarding the Faulkners' negligence in maintaining their fence by introducing evidence of past

5

incidents of straying, it is also true that the past incidents must have a "nexus in terms of time and location to the defendant's maintenance of the fencing at issue[.]" *Morris*, 344 Ga. App. at 27 (2) (a) (i) (citation and punctuation omitted). "Such prior, similar incidents could create a question of fact regarding the defendant's exercise of ordinary care because they could show that the defendant was on notice that his maintenance of the fence was insufficient." Id. See also *Johns v. Marlow*, 252 Ga. App. 79, 80-81 (555 SE2d 756) (2001) (defendant's knowledge that his horses previously had opened a gate and had broken a fence's electric wire created a jury question as to whether defendant exercised ordinary care in securing his horses).

Here, the fact that there may have been three stray cows that night does not show that the Faulkners were on notice that their maintenance of the fence was insufficient. Consequently, the Crumbleys failed to present evidence of the Faulkners' negligence in maintaining their fences other than the mere fact that cows strayed on the road. See *West v. West*, 299 Ga. App. 643, 645 (683 SE2d 153) (2009) (summary judgment proper where the defendants introduced evidence that the fencing surrounding the pasture was in good repair and the gates were closed at the time the accident and the plaintiff failed to present any evidence to challenge these claims); *Thomas v. Morrison*, 256 Ga. App. 127, 128 (567 SE2d 692) (2002) (summary

6

judgment proper where the defendant presented evidence that the fence was in good repair and that the gates to the pasture were all closed and latched and the plaintiff failed to come forward with any evidence to the contrary); *John Hewell Trucking Co.*, 239 Ga. App. at 863 (summary judgment proper where the defendant presented evidence that there were no holes or breaches in the fences upon inspection immediately after the accident, and that, while other cattle belonging to the same owner had strayed beyond their pastures, no nexus was established in terms of time and location to the defendant's maintenance of the fencing here in issue). Compare *Green v. Heard Milling Co.*, 119 Ga. App. 116 (1) (166 SE2d 408) (1969) (conflicting testimony of a hole in pasture fence, coupled with testimony that a back gate was open, was sufficient evidence contradicting that defendant's testimony of his own care in maintaining pasture fence, such that denial of a directed verdict was not error); *Carver v. Kinnett*, 209 Ga. App. 577, 579-580 (1) (434 SE2d 136) (1993) (no summary judgment where there was evidence of the defendants' negligence in maintaining their fences).

Accordingly, the evidence that there were three stray cows on the roadway rather than just one, without more, does not create a genuine issue of fact that the Faulkners, by failing to maintain adequate fences, breached their duty to keep their

7

livestock off the road, but is only impermissible speculation. See *West*, 299 Ga. App. at 645. Therefore, the trial court erred in denying the Faulkners' motion for summary judgment.

2. The Faulkners also argue that they were entitled to summary judgment on allegations they violated a Jasper County ordinance because OCGA § 4-3-1, et seq. preempts Jasper County Ordinance 6-34. We agree.

Both OCGA § 4-3-1, et seq. and Jasper County Ordinance 6-34 prohibit the running at large of livestock. Jasper County Ordinance 6-34 provides in pertinent part that:

> [t]he running at large of horses, mules, other equidae, cattle, sheep, goats, hogs, domestic rabbits, or domestic fowl, or ostrich and emu, or other animals within the limits of the county is hereby declared a nuisance and shall be unlawful for the owner or keeper of any such animal or fowl to permit the same to run at large within the county.[1]

Likewise, OCGA § 4-3-3 provides that:

---

[1] Jasper County, Georgia Code of Ordinances, PART II, Chapter 6 - Animals, https://library.municode.com/ga/jasper_county/codes/code_of_ordinances?nodeId =PTIICOOR_CH6AN_S6-6DEAN (last visited Sept. 9, 2020).

[n]o owner shall permit livestock to run at large on or to stray upon the public roads of this state or any property not belonging to the owner of the livestock, except by permission of the owner of such property.

The Faulkners contend that the Jasper County Ordinance is preempted by state statute because the ordinance imposes greater liability. Specifically, the Faulkners assert that OCGA § 4-3-3 provides for an exception to liability where livestock runs at large on property with the permission of the owner whereas the ordinance makes no such exception. The Faulkners further argue that OCGA § 4-3-3 only provides liability for permitting livestock to run at large or stray, while the ordinance creates liability for animals without limitations to livestock.[2] Lastly, the Faulkners contend that state law only extends liability to owners of the grazing animals, whereas the ordinance extends liability to both the owners and keepers of animals.

Laws of a general nature shall have uniform operation throughout this state and no local or special law shall be enacted in any case for which provision has been made by an existing general law, except that the General Assembly may by general law authorize local governments by local ordinance or resolution to exercise police powers which do not conflict with general laws.

---

[2] OCGA § 4-3-2 (1) defines the term livestock to mean "all animals of the equine, bovine, or swine class, including goats, sheep, mules, horses, hogs, cattle, and other grazing animals.

9

Ga. Const. of 1983, Art. III, Sec. VI, Par. IV (a). "The doctrine of state preemption is based on the concept that statutes of the state legislature control over county ordinances. Generally preemption is based on legislative intent. . . . [S]tate law may preempt local law expressly, by implication, or by conflict." *Franklin County v. Fieldale Farms Corp*., 270 Ga. 272, 273-274 (1) (507 SE2d 460) (1998) (citations omitted). "[A]n exception to the general rule of preemption [applies] when [the] general law authorizes the local government to act and the local ordinance does not conflict with general law." Id. at 275 (2). "We have concluded that there was no conflict when the local law did not impair the general law's operation but rather augmented and strengthened it." Id.

The statute at issue here, OCGA § 4-3-1, specifically finds and declares "a necessity for a uniform state-wide livestock law embracing all public roads in the state and all other property." The ordinance at issue in this case appears to deal with the same subject as the general law, and thus the general rules of preemption would control unless the ordinance falls within the exception to the uniformity clause. In examining OCGA § 4-3-1, this Court has stated that it "expressly preempts local laws on the subject by declaring the need for uniformity. Nothing in the statute authorizes

10

local governments to exercise power in this regard." *Hortman v. Guy*, 242 Ga. App. 174, 176 (3) (529 SE2d 182) (2000). Compare *Grovenstein v. Effingham County*, 262 Ga. 45, 47 (1) (414 SE2d 207) (1992) (the Supreme Court of Georgia upheld a county ordinance where the state statute at issue expressly authorized counties "to exercise by local ordinance the police power of revoking licenses for the sale of beer and wine[.]").

In *Hortman*, just as in the present case, the plaintiffs alleged liability under a county ordinance following an auto accident with a cow. 242 Ga. App. at 174. This Court upheld summary judgment in favor of the defendant finding that "a county ordinance extending responsibility for stray livestock to persons not included in the state statute would not augment the state law; it would alter its stated purpose, which is to create a state-wide uniform law applying to these circumstances." Id. at 176 (3). Here, the Faulkners argue, and we agree, that the ordinance alters the stated purpose of the statute because (1) it does not allow for livestock to run at large on property with the permission of the owner of the property; and (2) it extends liability to animals that are not "grazing animals;"[3] By expressly preempting local laws on the

---

[3] We disagree with the Faulkners' third argument that the ordinance extends liability to owners and keepers of such animals as OCGA § 4-3-2 (2) defines the term"owner" to include "any person, association, firm, or corporation, natural or

11

subject of livestock animals on the public roadways and declaring the need for state-wide uniformity, we must conclude that the General Assembly has not authorized local governments to regulate such matters. Compare *Pawnmart, Inc. v. Gwinnett County*, 279 Ga. 19, 20 (2) (608 SE2d 639) (2005) (no preemption where state statute regulating pawnbrokers expressly preserves local laws (which include county ordinances) to promulgate additional rules, effectively authorizing them.) "Preemption of a local ordinance may be inferred generally from the comprehensive nature of a state statute[.]" *City of Atlanta v. S.W.A.N. Consulting & Security Services, Inc.*, 274 Ga. 277, 279 (2) (553 SE2d 594) (2001).

Accordingly, the Faulkners are entitled to summary judgment as to the Crumbleys' claims under the ordinance.

*Judgment reversed. Miller, P. J., and Mercier, J., concur*.

---

artificial, owning, having custody of, or in charge of livestock." The term "keeper" is synonymous with "having custody of, or in charge of livestock."